# WHEELING.

## McKAY v. OHIO RIVER RAILROAD CO.

Submitted June 6, 1890.—Decided June 24, 1890.

1. RAILWAY COMPANY—CONDUCTORS—PASSENGERS—TICKETS.

   A railroad-conductor may demand a ticket as evidence of a passenger's right of passage, or on failure of the passenger to produce it may demand payment of fare, and on failure to pay it may lawfully eject the passenger from the train, using no more force than necessary.

2. RAILROAD COMPANY—PASSENGERS—TICKETS.

   If a passenger pay a railroad agent fare for a certain trip, and

| | |
|---|---|
| 34 | 65 |
| 36 | 327 |
| 34 | 65 |
| 39 | 416 |
| 39 | 478 |
| 34 | 65 |
| 40 | 275 |
| 34 | 65 |
| 41 | 172 |
| 41 | 184 |
| 34 | 65 |
| f46 | 542 |
| 34 | 65 |
| 47 | 592 |

by mistake of the agent is given a ticket not answering for that trip but one in an opposite direction, and the conductor refuses to recognize such ticket and demands fare, which the passenger fails to pay, ejection of the passenger from the train without unnecessary force will not be ground of action against the company as for a tort; but the action may and must be based on the breach of the contract to convey the passenger.

*V. B. Archer* of counsel for appellant cited:

31 W. Va. 220; 71 Ill. 391; 17 W. Va. 190; 19 W. Va. 325; 27 W. Va. 161; 66 A. M. Dec., 217; 96 N. Y. 305; 115 Mass. 304; 42 Wis. 23; 16 N. Y. 489; 73 Ind. 568; 39 Me. 458; 7 Wis. 111; 25 W. Va. 692; Id. 127; 64 Md. 63; 18 Am. & Eng. R. R. Cas. 339; 19 Ohio St. 157; 68 Mo. 329; 15 Fed. Rep. 57; 30 Fed. Rep. 904; 20 Am. Rep. 232; 34 Am. & Eng. R. R. Cas. 316; 40 Miss. 374; 11 La. Ann. 292; 57 Pa. St. 339; 53 Pa. St. 276; 48 N. H. 541; 18 Pac. Rep. 211; 74 Ia. 137; 31 W. Va. 220; 56 N. Y. 298; 37 Mich. 342; 68 Ill. 499; Thomp. Carr. 337, 338; 68 Mo. 593; 25 W. Va. 139; 78 W. Va. 732; Patt. R'y. Acc. Law 471; 91 U. S. 495; 3 Wood R'y Law § 364; 34 Am. & Eng. R. R. Cas. 290; 135 Mass. 407; 26 Am. & Eng. R. R. Cas. 264; 2 Am. & Eng. R. R. Cas. 514; 16 Am. & Eng. R. R. Cas. 352; 18 Am. & Eng. R. R. Cas. 248; 6 Am. & Eng. R. R. Cas. 345; 36 Am. Rep. 303; Wood Mayne Dam. 74; 66 Miss. 14; 59 Tex. 563; 46 Am. Rep. 278; 66 Tex. 580; 135 Mass. 407; 37 Mich. 342; 84 Ill. 468; 53 Vt. 190; 41 Am. Rep. 305; Pierce R. R. 302; 6 Nev. 224; 26 Am. & Eng. R. R. Cas. 190; Hill. N. Tr. (2nd Ed.) 410, 411; 3 S. W. Rep. 824; 1 Munf. 288; 53 Ia. 503; 91 Ill. 298; 48 N. H. 541; 29 Alb. L. Journ. 471; 37 Mich. 342; 56 N. Y. 295; 68 Ill. 499; 34 Md. 532; 29 Ohio St. 214; 36 Conn. 287; 42 N. J. L. 449; 23 W. Va. 617; 36 Wis. 450; 15 N. Y. 455; 46 N. H. 213; 43 Ill. 420.

*R. White* of counsel for plaintiff in error cited:

9 Ex. 341; 28 N. Y. 217; L. R. S. Ex. 67; 22 Ga. 269; 30 Hun 377; 71 Ill. 392; 53 Vt. 190; 62 Ill. 315; Wood R'y Law 1238; 28 Ohio St. 126; 63 Ia. 417; 74 Mo. 147; 1 Cush. 452; 31 Mo. 243; 25 W. Va. 139; 61 Am. Dec. 494; 63 Am. Dec. 78; 90 Am. Dec. 382; 31 Mo. 243; 74 Mo. 147; 63 Ia. 417; 62 Ill. 315; 71 Ill. 392; 18 Ill. 460; 65 Miss. 14; 31 W. Va. 220; 18 W. Va. 301; 94 N. C. 318.

*J. O. Pendleton* for defendant in error cited :

64 Mich. 631; 55 Ill. 190; 123 Pa. St. 140; 64 Mich. 631; 67 Ill. 312.

Brannon, Judge :

This was an action of trespass on the case, in the Circuit Court of Ohio county, brought by Winfield S. MacKay against the Ohio River Railroad Company, resulting in a verdict and judgment for the plaintiff for five hundred and thirty nine dollars and seventeen cents, to which judgment this writ of error was granted on the petition of said company.

An inspection of the declaration raises : the question, whether it states a cause of action *ex contractu* or *ex delicto;* whether it is in *assumpsit* on a contract for transportation, or for tort for the ejection of the plaintiff from a car. It avers that the defendant company undertook and promised for certain hire and reward paid to it to safely and securely convey the plaintiff in its cars from the town of Ravenswood to Wheeling and back again to Ravenswood, and that the plaintiff confiding in such promises and undertaking of defendant did take a seat as a passenger in the defendant's car and was conveyed to Wheeling, and that afterwards still confiding in such promise and undertaking of the defendant he took a seat as a passenger in one of its cars to be conveyed back from Wheeling to Ravenswood; but the defendant, not regarding its promise and undertaking, but contriving to injure the plaintiff, did not convey him from Wheeling to Ravenswood but neglected and refused so to do. Thus far the declaration seems to be based on the contract of conveyance made by the defendant as a carrier with the plaintiff. But it then immediately avers that, instead of so conveying the plaintiff, the defendant by its servants violently and with great force caused the plaintiff against his will and protest to be ejected from said car, and to be pushed and hurled from it upon the ground, and to be prevented from going to Ravenswood on that day, by means whereof he was compelled to walk a long distance to a hotel, was greatly humiliated in his feelings and hurt in his pride by

being exposed to other passengers on the car, and was compelled to remain in Wheeling from his business and home, and to pay hotel-bills, and spend three or four dollars for telegrams sent to his wife, to allay her uneasiness on account of his failure to reach home when expected, and to spend money to purchase a ticket to reach home, and to borrow money for that purpose; and that his wife was ill, and her alarm from his failure to reach home when expected injured her, and protracted her illness, causing him to pay large medical bills and that his business was damaged by his detention from home, and he sustained numerous other injuries, to his damage ten thousand dollars. The most of this matter relates to the tort of ejecting the plaintiff from the cars, and looking to that as the cause or *gravamen* of the action.

The declaration thus contains matter based on the contract and matter based on the tort; and it is somewhat difficult to say whether it aims to state the breach of the contract to convey, or the tort in ejecting him from the car as the *gravamen* of the action. But it cannot be treated as double in nature. It must be classed either as an action *ex contractu* or *ex delicto*. The writ summons the defendant to answer an action of trespass on the case, and the declaration denominates the action as trespass on the case; and I conclude to regard the statement of the contract of conveyance as a passenger as matter of inducement explanatory of the reason of the plaintiff's presence on the car, and the ejection of the plaintiff from the car with force and arms. as the *gravamen* of the action, and shall treat the action as trespass on the case. This classification of the action is necessary in passing on the motion to exclude the plaintiff's evidence; for, if we regard the declaration as in *assumpsit*, the evidence would go to sustain the action, and the motion to exclude it would consequently be overruled, but, if we regard it as in case, the evidence is not sufficient to sustain the action, and the motion to exclude it should have been sustained.

The plaintiff's evidence shows that he purchased from the defendant's agent at Ravenswood what was regarded a round-trip ticket from Ravenswood to Wheeling and return,

and paid seven dollars and thirty-five cents for it, and under it went to Wheeling, and, when he started to return to Ravenswood, found that his ticket was stamped on each end from "Ravenswood to Wheeling" instead of being stamped as it should have been, on one end for passage from Ravenswood to Wheeling, and on the other from Wheeling to Ravenswood; that he did not notice the mistake, when he purchased the ticket, and first noticed it when he boarded the train at Wheeling to return to Ravenswood. The conductor on the train to Wheeling tore off one end or coupon of the ticket, and when, on his return, the plaintiff presented his ticket to the conductor, he refused to receive it because it called for a passage from Ravenswood to Wheeling, not from Wheeling to Ravenswood, and said to plaintiff: "This ticket is no good. You will have to pay your fare, or get off,"—and the plaintiff replied, "I'll be damned if I do." The conductor pulled the bell-rope to stop the train ; and, as the train was stopping, plaintiff asked the conductor what was the matter with the ticket, and he said it was not good. The plaintiff informed him that he had come up on it the day before with Conductor Patrick; and the conductor, Rice, then said, "He gave you the wrong end," and said, further, "You will have to pay your fare." Plaintiff then said to him that he had no money, and that, if the conductor had given him the wrong end of the ticket, it was a mistake, and it did not cost any more to take him back than to bring him up, to which Conductor Rice replied, "It don't make a damned bit of difference," and that plaintiff must pay fare or get off. When the train stopped, the plaintiff said : "If I get off here, somebody will have to pay for it. I want to get home on this train." Plaintiff says he then got off the train down upon the street in the city of Wheeling. He further says: "Of course the passengers could not hear what was said between the conductor and myself, and they did not know what I was put off for."

There is no act of tresspass shown by this evidence. There is not the slightest evidence of force or violence used by any of the defendant's employes upon the plaintiff. He was not, as alleged in the declaration, violently and with

great force ejected and pushed and hurled from the car, but walked from it himself, without the slightest battery or assault upon his person. He does not himself say so, and other evidences make it quite clear that no force or violence was used. The evidence does show a breach of the company's contract to convey the plaintiff as a passenger, or an agreement to sell a different ticket, but not a trespass, for which an action based on a tort can be maintained. It is simply the case of a refusal and failure to carry out its contract of conveyance, for which an action of trespass on the case in *assumpsit* based on that contract might be maintained. The mere manner of his expulsion would not sustain the action as one based on tort. The plaintiff's evidence is that the conductor "talked short" to him, and he to the conductor, and, when he was presenting his views as to the validity of the ticket, the conductor said, "It don't make a damned bit of difference,"—that he had to get off or pay fare.

In the late case in the Supreme Court of North Carolina, (*Rose* v. *Railroad Co.*, 11 S. E. Rep. 526,) an action for putting plaintiff and her husband off a train, it appeared, that, their ticket not being stamped as required, the conductor told the husband they must pay fare or get off, and afterwards at the next station said in a brusque decided manner: "This is H., if you are going to get off," and, they saying they had no intention of getting off unless ordered, he said, "Then I order you off," and they got off, and returned and paid fare, and it was held that the company was not liable for damages, though plaintiff was lying on pillows, and apparently an invalid. But, had force been used, if no more than was necessary to remove the plaintiff from the car, or if it be said that actual force is not necessary to sustain the action, but that threatened expulsion and departure of the passenger from the car by reason of it shall stand in lieu of it, I do not think the action can be maintained."

In *Frederick* v. *Railroad Co.*, 37 Mich. 342, it is said that the uniform and universal practice is for railroad-companies to issue tickets with the places designated from and to which the passenger is to be carried, and that these tickets are unhesitatingly accepted by the conductor as evidence

of the contract between the company and passenger, and that the conductor has seldom any other means of ascertaining or learning within time to be of any avail the terms of the contract, unless he relies on the statement of the passenger contradicted perhaps by the ticket, and that there will be cases where a ticket is lost, or where by mistake the wrong ticket was delivered to the passenger, and he will be obliged to pay his fare a second time to pursue his journey, and, if he is unable to do so, great delay and injury may result. Such delay and injury would be the natural result of the loss of the ticket or breach of the contract, but would in part at least be in consequence of the pecuniary circumstances of the party ; that such cases are exceptional, and however unfortunate the party who is so situated, yet no rule has ever been devised that would not at times injuriously affect those it was designed to accommodate. The judge then asks: "How, then, is the conductor to ascertain the contract entered into between the passenger and the railroad-company, where a ticket is purchased and presented to him ? Practically there are but two ways,—one, the evidence afforded by the ticket; the other, the statement of the passenger contradicted by the ticket. Which should govern? * * * There is but one rule which can safely be tolerated with any decent regard to the rights of railroad-companies and passengers generally. As between the conductor and passenger and the right of the latter to travel, the ticket produced must be conclusive evidence ; and he must produce it, when called upon, as the evidence of his right to the seat he claims. Where a passenger has purchased a ticket, and the conductor does not carry him according to its terms, or if the company through the mistake of its agent has given him the wrong ticket, so that he has been compelled to relinquish his seat, or pay his fare a second time in order to retain it, he would have a remedy against the company for a breach of the contract ; but he would have to adopt a declaration differing essentially from the one resorted to in this case."

In that case the passenger had paid to a point beyond that called for by the ticket, and refusing to pay fare,

was ejected, and was denied a recovery in an action on the case. The principle enunciated in this case in Michigan, that as between the passenger and the conductor the ticket is the conclusive evidence of the passenger's rights, is sustained in several well-considered cases. *Townsend* v. *Railroad Co.*, 56 N. Y. 295; opinion by Chief Justice Cooley in *Hufford* v. *Railroad Co.*, 53 Mich. 118 (18 N. W. Rep. 580); *Railroad Co.* v. *Griffin*, 68 Ill. 499; *McClure* v. *Railroad Co.*, 34 Md. 532; *Shelton* v. *Railroad Co.*, 29 Ohio St. 214; *Downs* v. *Railroad Co.*, 36 Conn. 287; *Petrie* v. *Railroad Co.*, 42 N. J. Law, 449; *Yorton* v. *Railroad Co.*, 54 Wis. 234 (11 N. W. Rep. 482), *Bradshaw* v. *Railroad Co.*, 135 Mass. 407.

In the Ohio case of *Shelton* v. *Railroad Co.*, *supra*, it was held, that the fact, that a ticket had been purchased, which was afterwards wrongfully taken up by a conductor on one train, will not relieve a passenger from the duty of buying a ticket or paying fare on another train of the defendant, and that in such case the right of action would be for wrongfully taking up the ticket, and not for removal from the train for failure to pay fare.

In the Illinois case above cited, (*Railroad Co.* v. *Griffin*) it was held that if a passenger pay fare to a certain station, and the agent inadvertently give him a ticket to an intermediate station, the demand of a second fare will be a breach of the implied contract on the part of the company to carry him to the proper station. By paying a second time his action will be as complete, as if he resist the demand and suffer himself to be ejected; and his ejection will add nothing to his cause of action. It is his duty to pay the second fare; and, if the company fail to make reparation, he can maintain his appropriate action. This case recognizes the contract as the proper ground of action. *Hall* v. *Railroad Co.*, 9 Fed. Rep. 585.

In *Yorton* v. *Railroad Co.*, *supra*, the passenger desiring to stop over and having the right to a stop over ticket was given instead a trip check through the conductor's fault. It was held, that a second conductor may demand additional fare and may on refusal to pay eject the passenger from the train, using no unnecessary force, and that such

ejection will be no ground of recovery against the company, though it will be liable for the fault of the first conductor.

In *Townsend* v. *Railroad Co.*, *supra*, it was held that a regulation of a railroad company requiring passengers to present evidence to the conductor of a right to a seat or pay fare, is reasonable, and for non-compliance a passenger may be put off, and the wrongful taking of the passenger's ticket by a conductor of a previous train, on which the passenger had performed part of his journey, does not exonerate him from compliance with the regulation, and that for the wrongful act of the former conductor the company is liable. It does not justify the passenger in violating the company's lawful regulation on another train.

In *Hibbard* v. *Railroad Co.*, 15 N. Y. 455, it was held that a passenger who had a ticket in his pocket, and had exhibited it once to the conductor, and refused to exhibit it again when called on, was properly ejected for refusing to exhibit his ticket.

Here the plaintiff had a ticket not good for the trip he was making, and declined to pay fare. He · cannot maintain an action for ejectment or a threatened ejectment from the train, but must look to the breach of contract, or the act of receiving money for the round trip and giving a wrong ticket. If the passenger have a ticket good for the passage, and the conductor should refuse to recognize it, and expel the passenger, the act would be a tort; and an action as for a tort could be maintained. Judge COOLEY said in *Hufford* v. *Railroad Co.*, *supra*, that all the judges of the Michigan supreme court agreed that if the ticket was *apparently* good the passenger need not leave the car. But here the ticket was very apparently not good. Therefore the motion of the defendant to reject plaintiff's evidence as not sustaining his action should have been sustained, not overruled. As the evidence should have been excluded, it becomes unnecessary to pass on the instructions. The judgment is reversed, the verdict of the jury set aside, and the case is remanded for a new trial in accordance with principles herein indicated.

LUCAS, JUDGE, dissenting.

REVERSED. REMANDED.