## C. N. O. & T. P. RAILWAY CO. *v.* HARRIS.

### (*Knoxville.*   September Term, 1905.)

1. **COMMON CARRIER.**   Contract of carriage—Effect of ticket.
   It is well settled that the actual contract between the carrier
   and passenger must govern, and not the recitals of a ticket is-
   sued by the carrier to a passenger.  The ticket is a mere evi-
   dence of the contract, issued by the carrier and cannot be con-
   trolled by the passenger.  (*Post, pp.* 511, 512.)

Case cited and approved: O'Rourke v. St. Ry. Co., 103 Tenn.,
124.

Case distinguished: Railroad v. Fleming, 14 Lea, 128.

2. **SAME.**   Same.  Case in judgment.
   Plaintiff purchased from an initial carrier transportation over its
   and the defendant's lines and received an order on the agent
   of defendant for a ticket on that line.  She was unable to pro-
   cure a ticket over the line of defendant, a connecting carrier,
   because of the negligence of its agent.  *Held*: defendant was
   bound to transport plaintiff safely and was liable for indigni-
   ties offered her by its conductors.  (*Post, pp.* 502-512.)

3. **SAME.**   Liability for insults to passengers.
   A common carrier is liable in damages to a passenger not only
   for injuries to his person by the violence of its employees, but
   likewise for injuries to his feelings by the indecent and insult-
   ing language of its employees, upon the ground that its con-
   tract obligates the carrier, not only to transport the passenger,
   but to guarantee him respectful and courteous treatment from
   both passengers and its own employees.  (*Post, p.* 512.)

Case cited and approved: Knoxville Traction Co. v. Lane, 103
Tenn., 376.

**4. SAME.** Damages for indignities to passengers.

The evidence in this case, being an action against a carrier for personal indignity offered a passenger by the conductors of the carrier, was examined and it was held that a verdict for the amount shown in the opinion would not be set aside as excessive.

FROM ROANE.

Appeal in error from the Circuit Court of Roane County.—GEORGE L. BURKE, Judge.

OWINGS & NICHOLAS, for the Railway Company.

BROWN & CASSELL and ASBURY WRIGHT, for Harris.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The plaintiff below recovered a verdict against the railroad company for the sum of $1,800 as damages for the breach of a contract of carriage, and for personal indignities offered her while a passenger on one of defendant's trains. On motion for a new trial a remittitur of $303 was suggested by the trial judge, which was accepted by the plaintiff, and a judgment pronounced on the verdict of the jury against the defendant company for the sum of $1,497. The company appealed, and has assigned errors.

Railroad v. Harris.

The record reveals that on the 15th of June, 1903, Mrs. Harris purchased from the agent of the Southern Railway Company at Asheville, North Carolina, transportation from Asheville to St. Louis and return, paying therefor the sum of $20. The plaintiff was given a round-trip ticket over the Southern Railroad to Harriman Junction, and in addition an order on the ticket agent of the Cincinnati, New Orleans & Texas Pacific Railway Company at Harriman Junction for a first class round-trip ticket from Harriman Junction to St. Louis, Mo., via the Cincinnati, New Orleans & Texas Pacific Railway. The plaintiff left Asheville about 12 m. over the Southern Railroad, and reached Harriman Junction the same evening at about 10 o'clock. She immediately repaired to the ticket office of the Cincinnati, New Orleans & Texas Pacific Railway at said point for the purpose of getting a ticket to St. Louis, Mo., and return, in exchange for said order. It appears that the regular ticket agent was not in his office, and, although the train was delayed at Harriman Junction for over an hour on account of a wreck, and the plaintiff made several efforts to find said agent, he failed to put in an appearance. However, some one in the second story of the office probably the train dispatcher, told her that she could get a ticket by presenting her order to the ticket agent of the Cincinnati, New Orleans & Texas Pacific Railway at Oakdale, a point on defendant's line about two miles from Harriman Junction. This person also stated to the plaintiff that he would telegraph

said agent at Oakdale to furnish her a ticket, and further instructed her to hand her order to the sleeping-car porter and request him to exchange it for the ticket when the train arrived that night at Oakdale. The plaintiff accordingly turned her order over to the sleeping-car porter, who promised to exchange it as directed The plaintiff thereupon went to her berth in the sleeping car, and retired for the night. It appears that, when the train reached Oakdale, it stopped for such a short time that the sleeping-car porter was prevented from procuring the ticket as directed, and afterwards returned the order to plaintiff, explaining his inability to have it exchanged for lack of time.

The record discloses that the plaintiff was a widow traveling alone with her son, a boy of tender years. She testifies that some time after midnight the conductor of the train, without giving her any warning, opened the curtains of her berth, where she was disrobed, and, throwing the light from his lantern into her face demanded in a rude and angry manner the payment of her fare. The plaintiff explained to him that she had purchased a round-trip ticket at Asheville, North Carolina, to St. Louis, Missouri, but had been prevented, without fault on her part, from getting her ticket order converted into a regular ticket at Harriman Junction. She further testified that the conductor would listen to no explanation, but demanded her fare under penalty of being put off the car. She thereupon paid him the sum of $3 to cover the

Railroad v. Harris.

fare of herself and son from that point to Somerset, Kentucky, where this conductor was to leave the train. The plaintiff testified that at Somerset, Kentucky, the conductor, West, turned all his tickets over to another conductor, one O'Connell, and that neither one of these conductors made any effort to have her exchange order converted into a regular ticket, although West admits that he told O'Connell about the circumstances. According to the testimony of the plaintiff, after the train left Somerset the new conductor, O'Connell, came immediately to her berth and demanded the payment of her fare. Plaintiff explained to this conductor why she had not procured a ticket in exchange for the order. He became abusive, and threatened to put her off the train, and said "she was trying to beat her way—trying to steal a ride—that he had met people like this before, and that he was not going to fool with her." "He said he would put me and my child and baggage off at a place where there was no place to stop. He further stated that he would have an officer for me at Lexington, and put me off the train."

Robert Mitchell, who was a passenger on the train, corroborates the statement of Mrs. Harris as to her treatment by conductor O'Connell. This witness stated that he was sent for by Mrs. Harris about 6 o'clock a. m. on the morning of June 16th, and she related the fact that the conductor of the train at about 3 o'clock a. m., threatened to put her off the train and compelled her to pay fare. While he was talking to her about the matter,

the train conductor came along and demanded of Mrs. Harris, in his presence, her ticket. He (Mitchell) explained to the conductor that she had a cash fare receipt calling for a ticket, and told him that he had tried along with Mrs. Harris, to get the ticket for her at Harriman Junction, Tenn., but that they could not find any agent. The conductor said he could not tell about that; that he could not let her ride without a ticket, notwithstanding the fact that she showed him the receipt for which she had paid $20 at Asheville, North Carolina, for transportation over this road to St. Louis and return. The conductor became very abusive and ugly, and said that he would put her off the train at the first station; that she was trying to beat her way; that he had been told by the first conductor (leaving the train probably at Somerset) that he did not propose to let her ride any further, but would put her off at the next station. The conductor and he (Mitchell) had a few words about the matter. The rest of the passengers began to crowd around, and the conductor made some very cutting remarks about Mrs. Harris trying to steal a ride. "He said again for her to get ready and get off the train at the next station, naming a place which I have forgotten, and which we were then nearing. I called the conductor to the front of the car and arraigned him bitterly for such harsh treatment of a lady. He said to me, 'Why don't you pay her fare?" I told him I would if he would put her off; that I would pay her fare, and she would then make trouble for the railroad com-

pany. The conductor then said, 'I have never put a woman off the train yet,' and that his wife would rebuke him if he ever did. I suggested to the conductor that he get her ticket issued at the first station. When we came to Lexington he did this, and I went with him to the ticket agent (Queen & Crescent Route) and explained all the circumstances to the agent. Said agent then issued the ticket, and remarked, 'I am surprised the way this lady has been abused.' . . . When Mrs. Harris sent for me about 6 o'clock in the morning, I found her very nervous and excited, and extremely worried about the way the conductor had treated her, and she continued very much worried and nervous un- .til we parted on the journey at Indianapolis. Mrs. Harris was polite to the conductor, and, so far as I know, gave no provocation for such treatment."

It is obvious from this statement of the case, without further elaboration of the facts, that there is sufficient evidence to sustain a verdict against the company for personal indignities offered this passenger by the conductors of the trains.

There was no controversy in the court below as to the authority of the Southern Railway to bind the Cincinnati, New Orleans & Texas Pacific Railway by contract for transportation of defendant over its line to St. Louis, Missouri. It was admitted by counsel in open court below that the Southern was its agent and had a right to issue the exchange ticket or order.

The first, second, and third assignments of error raise

cognate questions, and will be considered together. These assignments are based on the charge of the trial judge to the effect:

(1) That a failure of defendant company to have an agent at Harriman to exchange plaintiff's order for a ticket was an act of negligence, and, if said agent instructed plaintiff to get her exchange perfected at Oakdale, it was the duty of defendant company to give plaintiff an opportunity to make such exchange.

(2) If plaintiff failed to get exchange through no fault of hers, her right to continue her journey on that particular train would not be lost.

(3) If defendant's agent at Harriman Junction instructed plaintiff to place said exchange order in the hands of the porter, who would make the exchange for her at Oakdale, she had a right to believe the proper exchange would be made, and would have the right to remain on the train without the payment of additional fare.

It is insisted these instructions were erroneous for the reason that plaintiff had no ticket, and the exchange order expressly recited on its face that it was not good on trains. It is said the effect of the judge's charge was to tell the jury that the plaintiff, after having failed to see the company's agent at Harriman, and because he was not present to exchange or give her a ticket on the order, could then treat the order as a ticket, and thereafter ride on it. It is argued by counsel for the

Railroad v. Harris.

·company that under the conditions stated plaintiff had two courses open to her:

(1)   She could have elected not to proceed without a ticket, and brought suit for the breach of the contract in not supplying her with a ticket on the order, or,

(2)   She could have continued on the train, paying her fare, and suing for the recovery of the money.

But it is insisted that, since the order itself recited it was not good on trains, plaintiff had no right to continue her journey on it, and that the conductor could lawfully demand payment of fare. In support of this view counsel cite *McKay* v. *Ohio River R. R. Co.*, 34 W. Va., 65, 11 S. E., 737, 9 L. R. A., 132, 26 Am. St. Rep., 913, in which it was held that, if a passenger pay a railroad agent fare for a certain trip and, by mistake of the agent, is given a ticket not answering for that trip, but one in an opposite direction, and the conductor refuses to recognize such ticket and demands fare, which the passenger fails to pay, ejection of the passenger from the train without unnecessary force will not be ground of action against the company as for tort, but the action may and must be based on the breach of the contract to convey the passenger. See, also, *Trezona* v. *Chicago Great Western Railway*, 107 Iowa, 22, 77 N. W., 486, 43 L. R. A., 136. Counsel also relies on the case of *Mosher* v. *St. Louis, Iron Mountain & Southern Railway*, 127 U. S., 390, 8 Sup. Ct., 1324, 32 L. Ed., 249, and *Boylan* v. *Hot Springs Railroad Company*, 132 U. S., 146, 10 Sup. Ct., 50, 33 L. Ed., 290.

The argument of counsel for the company is that neither of the conductors on defendant's train could know what defendant in error did at Harriman Junction, or whether there was an agent there to give her a ticket, or whether she was the person who had purchased the ticket in the first instance at Asheville, North Carolina. It is said that conductors cannot be expected or required to carry on an investigation or try the facts necessary to be ascertained in such a matter; that it is their duty to look after the trains, take up tickets, and collect fare from the passengers, and if a passenger has no ticket, to eject him from the train upon his refusal to pay fare. In *Railroad* v. *Fleming,* 14 Lea, 128, it was said by this court that a passenger who loses or mislays his ticket after entering the cars has no right to supply its place by offering testimony that he actually bought the ticket and lost it, and the conductor or other employee, whose duty it is to take up the ticket, cannot be required to hear testimony on the subject, or to determine its weight at the peril of the company, under a rule which gives him no discretion. In the *Fleming Case* the passenger was at fault in losing or misplacing his ticket, but in the present case the passenger was at no fault whatever, but the negligence was wholly that of the company and its agents. In the later case of *O'Rourke* v. *St. Railway Company,* 103 Tenn., 124, 52 S. W., 872, 46 L. R. A., 614, 76 Am. St. Rep., 639, it was held that if a passenger on a street car, who has paid full fare and complied with all other reasonable and valid conditions

Railroad v. Harris.

to entitle him to passage, is expelled by the conductor on account of a defect in his ticket or transfer check, not imputable to any fault of the passenger, but solely to the fault and negligence of the company's agent who issued it, the passenger can maintain an action for damages for such expulsion, and cannot be required to pay a second fare, and seek redress by action for breach of contract or for negligence of agent who issued ticket. The actual contract, not the ticket, controls the rights and duties of carriers and passengers. The ticket is but evidence of the contract. It is the act of the carrier over which the passenger has no control. The carrier is alone responsible for mistakes therein and their consequences. The passenger has a right to presume and rely upon the ticket as correctly expressing the contract.

It will be observed that the rule anounced in the latest deliverance of this court on this subject is that the actual contract between the carrier and passenger must govern, and not the recitals of the ticket, which, is the mere evidence of the contract, and which is issued by the carrier and cannot be controlled by the passenger. It was said in *O'Rourke* v. *Railway,* supra, that:

"The undoubted right of a carrier to require passengers to procure and present tickets does not imply the right to expel passengers because the tickets they offer chance to be defective or void without their fault. . . To justify expulsion of passengers on account of defective tickets, made so by the carrier's fault, is to visit upon the innocent passenger the consequences of the carrier's negligence."

We are of the opinion that the principles enunciated in the *O'Rourke Case* are applicable to the facts of this case, and, although the passenger was not ejected from the train, there was, nevertheless, a breach of the contract of carriage by the personal indignity offered the passenger by the conductors of defendant's trains. Since the failure on her part to procure a ticket in exchange for her order was not attributable to any fault on her part, but was wholly the result of the negligence of the company and its agents, she was still entitled to ride, and the relation of carrier and passenger still existed between them. The carrier is under an obligation, not only to transport the passenger safely, but to protect him from trespasses or insulting conduct, either from other passengers on the train or its own employees.

In *Knoxville Traction Co.* v. *Lane,* 103 Tenn., 376, 53 S. W., 557, 46 L. R. A., 549, it was held by this court that a common carrier is liable in damages to a passenger, not only for injuries to his person by the violence of its employees, but likewise for injuries to his feelings by the indecent and insulting language of its employees, upon the ground of breach of its contract that obligates the carrier, not only to transport the passenger, but to guarantee him respectful and courteous treatment, not only from strangers, but from its own employees.

We are further of opinion that the verdict of the jury, in view of the facts disclosed in this record, was not excessive—at least not so excessive as to evince partiality, prejudice, corruption, or unaccountable caprice on the part of the jury.

Let the judgment be affirmed.