[No. 6294.]

## BLEECKER v. THE COLORADO & SOUTHERN RAILROAD COMPANY.

1. **Common Carriers—Passenger Entitled to Decorous Treatment**—The contract evidenced by railway ticket entitles the passenger not merely to safe carriage, but to respectful and decorous treatment from the employees of the carrier. Unprovoked, abusive and insulting language towards a passenger, by the conductor of the train, while exercising his office, gives the passenger an action for compensatory damages, even though no violence is used and the conductor's misconduct goes no further than words.—(143)

2. **Master and Servant—Liability of Master for Misconduct of Servant**—A railway company is liable for insulting language towards a passenger, used by the conductor in charge of the train, without provocation from the passenger; and it need not appear that the conductor's misconduct was authorized in the first instance, or afterwards ratified. Having appointed the conductor to perform, for it, the contract of carriage which it has undertaken, his misconduct, while performing such contract, is, in law, the misconduct of the company.—(143)

3. **Damages—Mental Suffering**—Insulting and opprobrious language used towards a passenger by the conductor of a railway train, without provocation, entitles the passenger to compensatory damages.—(144-146)

The difficulty of determining the proper measure of compensation is not to deprive the passenger of his remedy.—(146)

4. **Cases Overruled, Explained or Distinguished**—Diamond Rubber Co. v. Harriman, 41 Colo. 415, distinguished.—(149)

*Error to Boulder District Court*—Hon. JAMES E. GARRIGUES, Judge.

Mr. A. R. MORRISON for plaintiff in error.

Mr. E. E. WHITTED, Mr. P. H. HOLME and Mr. R. H. WIDDICOMBE for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error brought suit against defendant in error to recover damages claimed to have been

sustained as the result of the alleged use, by one of the employees of defendant, of insulting language and remarks directed to, and of and concerning plaintiff. The complaint, as originally filed and amended, alleged that defendant was a common carrier, carrying passengers for hire between the City of Boulder and the City of Colorado Springs, in this state; that plaintiff purchased from defendant a ticket good for transportation between these points; that he became a passenger on one of the defendant's trains, upon which he was entitled to ride by the terms of that ticket.

It is then alleged that while plaintiff was a passenger on such train, and conducting himself in all respects with propriety, he "was grossly, repeatedly, willfully and maliciously insulted, in loud, profane and indecent language, containing threats, insults and abuse by an agent and servant of the defendant company to wit: By the conductor in charge of said train while in the act of collecting said ticket from this plaintiff, in the presence of a large number of his fellow passengers, and held up in ridicule, humiliation and disgrace; that said insults, threats and indecent language used by the said conductor towards this plaintiff, consisted of gruff demands upon the plaintiff that he should bring to the conductor, in the front part of the car, the tickets held by the plaintiff for himself and party, and that if plaintiff did not bring to the conductor the ticket held by the plaintiff, that he would put the plaintiff and his party off the train; that when the plaintiff herein refused to bring to the conductor the tickets, and after he had told the conductor that he, the plaintiff, had the tickets, and would give them to the conductor when the conductor came for them; that said conductor further insulted the plaintiff by saying to him that he (the plaintiff) had been used to having people get down on their knees to him; by asking him why he

did not act like a gentleman when he was asked to do anything, instead of acting like a damn little cur; by saying to the plaintiff that he was not a gentleman—that he was nothing but a cur, and by other gruff, rude and humiliating remarks, to and of this plaintiff. That on the whole of said trip, and when the said insults were given, the plaintiff was and ever since hitherto and still is a teacher in the State Preparatory School, at the County of Boulder aforesaid; and was on said trip accompanied by a large number of the students of said institution, some of them being under his own tuition at said institution, he having charge of said students on said trip, and all of them being present and necessarily hearing and observing the language used, and the insults and abuse given, all of which tended to the greater pain, mortification and humiliation of the plaintiff, from the fact that the abuse and insults were in the presence of those with whom he daily met and associated, and tended to lessen the respect with which he should be, by said students, regarded.

"That by reason of the premises, and of such language, insults, and abuse, plaintiff necessarily, and in fact, suffered great mental pain and mortification, to his damage in the sum of five thousand dollars."

To this complaint the defendant interposed a general demurrer, which was sustained. Plaintiff elected to stand by his complaint, and his action was dismissed. From this judgment plaintiff has brought the case here for review on error.

The sole question presented is, whether the complaint states a cause of action. In determining this question, the proposition is: Can a passenger, lawfully upon a railroad train, conducting himself with propriety, recover damages from the railroad company for mental suffering, caused by insulting language of the conductor of the train, directed to,

and of and concerning the passenger, of a character calculated to humiliate, mortify and disgrace him?

The contract of carriage, as evidenced by a railroad ticket, not only requires the carrier to exercise legal care in conveying the passenger to his agreed destination, but, in addition, the law imposes upon the carrier the obligation to absolutely protect the passenger against the misconduct of those employed to execute such contract. In other words, the contract evidenced by such ticket not only calls for safe carriage, but for respectful and decorous treatment at the hands of the employees of the carrier acting within the general scope of their employment.— Thompson on Negligence, secs. 3185-3186; *N. J. Steamboat Co. v. Brockett,* 121 U. S. 637.

Unquestionably, then, it is the duty of a railroad company to protect a passenger against insult from the conductor of the train upon which the passenger is lawfully riding, and this being so, the unprovoked use by the conductor to the passenger of opprobrious words and abusive language, tending to humiliate, or subject him to mortification, gives him a right of action against the company for compensatory damages.—*Cole v. Atlanta & W. P. Ry. Co.,* 102 Ga. 474; *Shepard v. C., R. I. & P. Ry. Co.,* 77 Iowa 54; *Mabry v. City Electric Ry. Co.,* 59 L. R. A. 590; *Texas & P. Ry. Co. v. Tarkington,* 66 S. W. (Tex.) 137, *Gillespie v. Brooklyn Heights Ry. Co.,* 178 N. Y. 347; Hutchinson on Carriers (3rd ed.), secs. 1093, 1094; Moore on Carriers, p. 636; 5 Ency. 550; Cooley on Torts (3rd ed.), p. 1367; Beech on Law of Railways, sec. 1001; *Lafitte v. N. O. C. L. R. Co.,* 43 La. Ann. 34; *Knoxville Traction Co. v. Lane,* 103 Tenn. 376; *Wolfe v. Ga. Ry. & El. Co.,* 58 S. E. 899; *C., N. O. & T. P. Ry. Co. v. Harris,* 115 Tenn. 501; *Ill. Cent. R. Co. v. Winslow,* 84 S. W. (Ky.) 1175; *Davis v. Tacoma Ry. & P. Co.,* 77 Pac. (Wash.) 209; *Haver v. Cent. R. R. Co.,* 62 N. J. Law 282.

Counsel for defendant contend that "mental suffering alone, unaccompanied by physical injury or any other element of recoverable damages, cannot be made the subject of an independent action for damages."

In some of the cases above cited, elements of damage other than insulting language were present, but the decisions did not turn on this feature. In some of these cases it is expressly held that insulting language of a character calculated to humiliate and mortify, was sufficient. This is particularly true of *Texas & P. Ry. Co. v. Tarkington,* an action for damages for insulting language alone, which it was held could be maintained, even though the language employed was not actionable *per se,* it being sufficient to give a right of action when it was insulting and calculated to humiliate and mortify. Such, in effect, is the holding in *Davis v. Tacoma Ry. & Power Co.* That words used were of themselves defamatory, would be proper, however, to consider on the question of damages. It should be borne in mind, that actions of the character under consideration, based upon insulting language alone, are not for defamation of character, but for behavior on the part of the employees of the carrier in violation of the express terms of its contract. There are authorities cited by counsel for defendant which support their contention, but we shall not undertake to analyze them, or point out wherein they may be, or are, distinguishable from the case at bar. Some of them are based upon the theory that an action for wrongful conduct of the conductor in the particulars involved is one of tort; others, that an action will not lie against the railroad company for such conduct unless the conductor would, also, be responsible, which would not be the case where language employed was not actionable *per se;* while others are based upon the ground that mental suffering, unaccompanied by physical in-

jury, or some other element of recoverable damages, is not regarded as sufficient upon which to maintain an action for damages, for the reason that it is too remote, uncertain, and difficult of ascertainment. The cases holding that, upon one or other of these grounds, the passenger is without remedy against the railroad company for insulting language used by the conductor, fail to give sufficient consideration to the proposition that a passenger holding a ticket which entitles him to transportation by means of the train he is on, is not there by sufferance, but by right; that a railroad company is a common carrier upon which is imposed certain duties and obligations to passengers, by operation of law; that the relation between carrier and passenger is contractual; that, independent of the terms of the ticket purchased by the passenger, the law imposes upon the carrier, as part of the agreement of carriage, respectful, decent and decorous treatment at the hands of those entrusted with the execution of its contract; that the unprovoked use of opprobrious and insulting language by a conductor to a passenger is a breach of that contract; that the carrier selects the conductor, and entrusts him with the fulfillment of its contract of carriage, and should, therefore, be responsible for his conduct; that passengers are peculiarly under the control of the conductor, and are practically helpless when compelled to defend themselves against his abuse; that while it is true that damages resulting from mental suffering, caused by the use of insulting language by a conductor to a passenger are difficult of ascertainment, the same is true, in a greater or less degree, in all actions brought to recover unliquidated damages; that for a breach of contract there should be a remedy; and that unless the carrier is held responsible for the act of the conductor in using opprobrious and insulting language to a passenger,

conducting himself properly, the latter is practically
without a remedy.

For a breach of the contract of carriage as the
result of a conductor assaulting a passenger without
provocation, the authorities are practically unani-
mous in holding that for insulting language used in
connection with the assault, damages for mental suf-
fering caused thereby may be recovered. If dam-
ages are recoverable for a breach of the contract in
one instance, there is no good reason why a breach
of such contract, as the result of using insulting lan-
guage, should not give a right of action, independent
of other acts which may constitute a breach. Wound-
ing a man's feelings by the use of opprobrious lan-
guage, in circumstances constituting a breach of the
contract of carriage, is as much actual damages as as-
saulting him. The difference is that by the breach in
one instance, mental suffering only is caused, while in
the other it is physical; but this is the result of the
difference in the means employed in committing an
injury, which constitutes a breach of the contract be-
tween the carrier and the passenger. To deny the
passenger a remedy, where, without justification, the
conductor assails him with abusive and insulting lan-
guage, would, in effect, abrogate an important ele-
ment of the contract of carriage, render it a nullity,
and permit the carrier to violate it with impunity.
That a new field of litigation may be opened, where
the damages claimed will be difficult of ascertain-
ment, is not a reason why the carrier should be re-
lieved from fulfilling its contract for decorous and
respectful treatment of its passengers.

In the case of *St. L., I. M. & So. R. Co. v. Taylor*,
84 Ark. 42, in which the majority of the court held
that mental suffering alone, unaccompanied by phys-
ical injury or other element of recoverable damages,
cannot be made the subject of independent action

against a carrier for damages, Mr. Justice Wood, in dissenting from this conclusion, aptly remarked:

"We are utterly unable to appreciate the fine distinction necessary to be made in order to allow damages for mental anguish in cases of breach of contract, where there has been a physical injury, however slight, produced by the wilful and malicious act of the employee or carrier, and yet to deny them where there has been no physical injury, but where the only injury is mental suffering. According to the rule announced, the weight of the finger laid on in anger, or any other frivolous assault, will let in all the damages for mental anguish; while, if there is no such trivial physical injury, there can be no recovery for the mental agony, although that may be of the most intense, humiliating and crushing character. I will not indulge a figment of the imagination or fiction of the law that will enable common carriers of passengers to violate the plain terms of their contract, and yet leave their passengers remediless."

One of the early cases on the subject of damages for mental suffering caused by offensive conduct, but not involving physical injury, is *Chamberlain v. Chandler,* 3 Mason 242, decided by Mr. Justice Story in 1823, then an associate justice of the supreme court of the United States. The action was by passengers against the master of a ship, for what appears to have been extremely unseemly conduct on the part of the master, in the way of obscenity, harsh threats, and immodest demeanor towards the passengers, although no physical violence was committed. In speaking of the duties of the master, the learned judge said: "In respect to passengers, the case of the master is one of peculiar responsibility and delicacy. Their contract with him is not for mere shiproom and personal existence, on board, but for reasonable food, comforts, necessaries and kindness. It

is a stipulation not for toleration merely, but for respectful treatment.''

Then, after reciting the facts upon which the cause of action was based, being, as we have said, unseemly conduct only, he proceeded to consider the proposition as to whether an action would lie in the absence of physical violence, regarding which he said:

''It is intimated that all these acts, though wrong in morals, are yet acts which the law does not punish; that if the person is untouched, if the acts do not amount to an assault and battery, they are not to be redressed. The law looks on them as unworthy of its cognizance. The master is at liberty to inflict the most severe mental sufferings, in the most tyrannical manner, and yet if he withholds a blow, the victim may be crushed by his unkindness. He commits nothing within the reach of civil jurisprudence. My opinion is, that the law involves no such absurdity. It is rational and just. It gives compensation for mental sufferings accompanied by acts of wanton injustice, equally, whether they operate by way of direct, or of consequential injuries. In each case the contract of the passengers for the voyage is, in substance, violated, and the wrong is to be redressed as a cause of damage.''

It is also suggested by counsel for defendant, that the complaint is insufficient, for the reason that it is not alleged the defendant instructed its conductor in advance to act towards plaintiff in the manner asserted, nor that the defendant afterwards ratified these acts. The position is not tenable. It is well settled that in all cases where the master owes a contractual duty to third persons, he cannot shirk or evade it by committing its performance to another, but is bound to perform the duty, and is liable for a failure to do it in any respect whereby injury results to another, whether such failure results from negli-

gence, or from the improper conduct of the agent to whom the duty is committed. Being bound to do the act or perform the duty, if he does it by another, the master is treated as having done it himself, and the fact that his agent acted contrary to his instructions, without his consent, or that he did not subsequently ratify the wrongful act, does not excuse him.

*The Diamond Rubber Co. v. Harryman,* 41 Colo. 415, is cited by counsel for defendant in support of their contention that a cause of action is not stated in the complaint. That case is entirely different from the one at bar. The relation between the parties is not the same, and the mental suffering, for which is was said damages were not recoverable, relates to circumstances in no wise similar to the case under consideration.

We conclude that the use by a conductor to a passenger lawfully upon a train and conducting himself with propriety, of language calculated to humiliate, mortify or disgrace the passenger, gives the passenger a right of action against the railroad company for compensatory damages for the mental pain thus occasioned.

The judgment of the district court is reversed and the cause remanded with directions to overrule the demurrer to the complaint.

*Reversed and remanded, with directions.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL concur.

---

### On Petition for Rehearing.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The petition for rehearing is based upon the ground that damages for mental suffering, unaccompanied by physical injury, or any other element

of recoverable damages, cannot be made the subject of an independent action for damages. This question is the vital one in the case, and we held that the complaint stated a cause of action, upon the ground that for a willful breach of the contract of carriage, as alleged in the complaint, damages were recoverable for the mental suffering thus occasioned.

No reason is now advanced in support of the petition for rehearing that was not urged upon our attention in the briefs, and on oral argument at the original hearing. We must concede, of course, that there are authorities sustaining the contention of counsel for the railroad company, but there are also cases sustaining our conclusion. We think the latter are the more logical. When there is a willful, tortious breach of the contract of carriage by those engaged in serving the public, it is certainly illogical to say that the person whose rights are thus infringed is without remedy for mental suffering thus caused, unless such breach is accompanied by some other element of damage. Such a conclusion would permit railroad companies to violate one of the most important elements of such contract, render it a nullity, and leave the passenger without remedy. Many cases are cited by counsel in the brief in support of the petition for rehearing, but, outside of those directly in point, they are, in the main, distinguishable from the case at bar. Take, for instance, our own decisions on the measure of damages in an action under section 1509, Mills' Statutes. Damages for mental suffering, caused by grief, are not recoverable, but this conclusion is based upon the ground that damages recoverable by the statute are limited to the net pecuniary benefit which the plaintiff might reasonably have expected to receive from the deceased.

The remaining cases cited, which hold that damages are not recoverable for mental suffering alone, are distinguishable from the one at bar, in that they

relate to cases brought under a statute similar to our own, or where contractual relations did not exist between the parties, or where there was a mere passive breach of a contract; that is to say, if there had been a violation of the contract, it was not occasioned by willful, tortious conduct, or were for simple negligence, or where the mental suffering was not the direct result of a tort, but remote, or the defendant was not engaged in a business *quasi* public. It may be true that cases like the one at bar should be reached by some statutory action on the part of the legislature; but, until such a remedy is supplied, we have no right to withhold the remedy which the law now affords. Should excessive damages be awarded by a jury in a given case, the trial court, or this court on review, can, and should, set aside such a verdict.

The petition for a rehearing is denied.

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL concur.

Decided January 3, 1911; rehearing denied April 3, 1911.