### HOUSTON E. & W. T. RY. CO. v. ANDERSON et ux.    (No. 1731.)

Court of Civil Appeals of Texas. Beaumont. Nov. 7, 1928.

Rehearing Denied Nov. 21, 1928.

Garrison & Watson, of Houston, Davis & Davis, of Center, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

Sol. Jones, of Marshall, and Anderson & Lewis, of Center, for appellees.

WALKER, J. Appellees, C. H. Anderson and his wife, Laura Anderson, negroes, instituted this suit against appellant, alleging that on or about the 24th day of May, 1927, the wife was a passenger on appellant's train being operated between Houston and Shreveport; that she duly purchased the ticket required of her for this transportation, and, on boarding the train, delivered her ticket to the conductor; that the conductor afterwards, while she was a passenger on the train, again demanded of her a ticket; that she informed the conductor he had already taken up her ticket; that the conductor denied this, and at that time abused her, threatened to put her off the train, stopped the train for that purpose, picked up her hand baggage, walked with her to the door of the train, and threatened to put her off, but did not do so; that, after being convinced that he had in fact received the transportation, he again approached appellee, told her that he heard she was threatening to sue the company for his conduct, ordered her to stop any such talk, and threatened to throw her out of the window of the coach, unless she did cease making any such threats. We quote as follows from appellant's brief, summarizing its answer:

"The defendant answered with a general demurrer and general denial, and with a special sworn plea that on the alleged date it was not engaged in the operation of trains, but that on March 1st, 1927, it had leased all of its equipment and properties to the Texas & New Orleans Railroad Company and had not since such date engaged in the operation of trains, and that it had not entered into any contractual relations with the plaintiffs and was not doing business on said date as a carrier of passengers for hire."

The special issues submitted on the pleadings and proof were all found by the jury in appellee's favor, fixing her damages in the sum of $2,000.

Appellant presents the following propositions for reversal:

It asserts that the evidence was insufficient to raise the issue that it owned the line of railway upon which appellee Laura Anderson was a passenger. That issue was duly raised by appellee's petition. The answer of appellant, as summarized above, is a clear confession that it did own the line of railway, and therefore, under appellant's pleading, appellee was relieved of the burden of proving ownership, but she assumed the burden, and fully met it. The evidence showed that appellant, prior to March 1, 1927,

with the approval of the Interstate Commerce Commission, leased to the Texas & New Orleans Railroad Company its line of railway between Houston and Shreveport, and being the line upon which appellee was a passenger. The conductor in charge of the train and of appellee's transportation testified that this line had been operated by appellant for more than 30 years prior to the 1st of March, 1927, and that shortly prior to that date he was notified of the lease, and since that date appellant had ceased to operate this line. He testified further that no change was made "in the equipment or anything else and the whole thing is now just like it was before." This evidence was sufficient to raise the issue of ownership against appellant. But, apart from the two propositions just discussed, we can and should know judicially that appellant owned the line of railway upon which appellee was a passenger. In Gulf, C. & S. F. R. Co. v. State, 72 Tex. 404, 10 S. W. 81, 1 L. R. A. 849, 13 Am. St. Rep. 815, it was said:

"The authorities cited show that we must take notice of the geography of the state, and at least of its navigable streams. It is a matter of history that important lines of railroad, once established, have remained as fixed and as permanent in their course as the rivers themselves. * * * Their locality becomes 'notorious and indisputable.' For instance, can we doubt that the Houston & Texas Central Road runs from Houston to Dallas, and that the Gulf, Colorado & Santa Fé touches with its lines the same point?"

In Miller v. Railway Co., 83 Tex. 518, 18 S. W. 954, our Supreme Court said:

"Railroads are public highways. * * * Their locality becomes so notorious and indisputable that the courts will take notice thereof."

In Missouri, K. & T. R. v. Lightfoot, 48 Tex. Civ. App. 120, 106 S. W. 395, it was said:

"We take judicial cognizance of the 'direction, run, and location of important railroads within this state.'"

Appellant's first and second propositions are as follows:

(1) "When the facts show that the act complained of was committed by a conductor employed by the Texas & New Orleans R. Co. while performing his duties on a train operated by the Texas & New Orleans R. Co., it is error to allow a judgment to be rendered against the H. E. & W. T. Railway Company in the absence of a showing of a contractual relation between the H. E. & W. T. Railway Company and the appellees."

(2) "In the absence of the showing of a contractual relation between the H. E. & W. T. Railway Company and the alleged passenger, it is error to allow judgment to be rendered against the H. E. & W. T. Railway Company because of abusive language spoken to such alleged passenger by the conductor of the Texas & New Orleans Railroad Company on a train operated by the latter named company."

The facts are, as already stated:

(a) The line of railway and its equipment belonged to appellant.

(b) On March 1, 1927, appellant, with the approval of the Interstate Commerce Commission, leased its line of railway and equipment to the Texas & New Orleans Railroad Company, which company was operating the train at the time in question.

(c) The servants in charge of this train were the servants of the Texas & New Orleans Railroad Company and not appellant. Prior to March 1, 1927, appellant notified its servants, including the operators of this particular train, that their relations with it would cease on the 1st of March, 1927, and that they would from that date become the servants of the Texas & New Orleans Railroad Company, and be paid by that company, and with that information before him the conductor in charge of this particular train entered the services of the Texas & New Orleans Railroad Company, and was continuously paid by that company for his services up to the time of this trial.

(d) No contention was made that this lease was authorized by any law of the state of Texas or any commission operating under the laws of the state of Texas, or that there was any general law on the statute books of the state of Texas authorizing this lease. The only contention made was that appellant was relieved of liability because the lease between it and the Texas & New Orleans Railroad Company was approved by the Interstate Commerce Commission.

On the facts thus summarized, appellant does not come within the rule of law suggested by our Supreme Court in International & G. N. R. Co. v. Underwood, 67 Tex. 593, 4 S. W. 218:

"The proposition that the owner is absolved from liability when the lease is duly authorized by law is not to be disputed."

The rule making appellant, as lessor, liable for the torts of its lessee, was thus stated by our Supreme Court in Central & M. R. Co. v. Morris, 68 Tex. 59, 3 S. W. 460:

"It is well established that a railroad company cannot transfer or lease the right to operate its road, so as to absolve itself from its duties to the public, without legislative authority. Nor will a lease duly authorized by law release the company from a failure to discharge its charter obligations, unless the law giving the power contains a provision to that effect. * * * [citing authorities.]

"We have not found any law in this state which confers upon a railroad [company] the power even to lease its road. Section 5 of article 10 of the constitution provides that no railroad corporation, nor the lessees of such corporation, shall consolidate with any other having a parallel or competing line. This is, however, a restriction upon the power of such corporations, and is not to be construed as a grant of authority to lease."

As we understand the decisions of Texas, the rule thus stated has never been modified. Trinity Valley & N. R. Co. v. Scholz (Tex. Civ. App.) 209 S. W. 224, and authorities therein cited.

█ Appellant's third contention is that the verdict was so against the great weight and preponderance of the evidence as to be clearly wrong. The evidence showed that appellees were negroes of the highest reputation among their white and colored friends; that they were law-abiding and respectful in their relations to the white race. We quote as follows from the testimony of appellee Laura Anderson:

"The conductor came in and came right on to me and said 'Girl, where are you going' and I thought he was teasing me and I looked up at him and I said 'You know where I am going' and he said, 'I don't know anything about where you are going' and he said again, 'Where are you going,' and he spoke angry to me then and said he didn't know where I was going, and I said, 'I am going to Shreveport,' and he said to me, 'Where is your check—Give me your check,'. and I said, 'I haven't got any' and he said, 'Get your check' and I said 'I haven't got one' and I pointed up to the window and told him that I asked him to put it there but he didn't do it and that he put it in his pocket and he said, 'I don't carry checks in my pocket,' and I said, 'You did' and he demanded that I get it and I said, 'I can't get it because you didn't give it to me,' and he said, 'You will pay your way to Shreveport or get off of the train,' and I said, 'I have already paid my way to Shreveport' and he said, 'You are going to pay your way or get off' and I said, 'I have already paid it' and he. said, 'get up and get off' and he reached up and got the cord and pulled it and that brought the train to a stop and he grabbed up a traveling bag he thought was mine and went on and said to me 'Get up and get off this train' and I said, 'I have paid my way to Shreveport' and he said 'You are going to pay it from here, or get off' and I said, 'I have already paid it,' and he said to me, 'I am not going to wait on you but a few minutes more.' He had stopped the train at that time—it was standing still—and I was trying to stay on the seat because I knew I had paid my way and he said 'Get up and get out' and he said, 'Porter, open up and dump her and her luggage on out' and he said 'come on out' and I got up with this purse in my hand and I said to the conductor, 'What is the fare from here to Shreveport'? and he said 'Dump her off' and the girl said 'Pay your way again mama, rather than be put off,' and I said again, 'What is the fare from here to Shreveport?' and he wouldn't reply and I said, 'I know what it is; it is $4.15.' That is what I said because I had paid that from Shreveport to Lufkin for my daughter to go to school, and I went outside of the coach and the porter opened up the train and I picked up this foot to go down the steps and the porter said to the conductor, 'Let her go back and set down; I'll pay her way,' and the conductor turned around in an angry way and said 'Somebody has to pay it; I am not,' and the porter said, 'go on back and set down' and I turned around humble and went on back and sat down."

In a later conversation with the porter who approached her, Laura Anderson stated that she was going to see a lawyer, because she had her baggage check in her purse. The conductor then came back, and we quote from the record:

"The conductor said, 'You have been in here making your brags about seeing a lawyer and I can give you reference to the place of a good lawyer' and he had his book out and I thought he was going to give me some name, but he was attending to his book otherwise, and he said, 'If I hear another word out of you about what you have to say tonight, I am going to come in here and pitch you out of that window,' and he pointed to the window where I had asked him to put my hat check."

With reference to the effect of this abusive treatment, the appellee Laura Anderson testified:

"I went to Houston and left Shreveport on the 9th of April, with a long tall slim conductor and when he said 'tickets' I gave him my ticket, and he put my check up there and when anyone else got on I stayed there and he would come in there and look at the check and one time he said, 'you have been with me ever since we left Shreveport' and I thought that all conductors ought to put the checks up there. I cried that night just like my daughter said I did. I was crying because the conductor was going to put me off and it was drizzling rain and dark and my feelings were hurt and every time I think about it, if I am laying down in bed and think about that trip from Houston to Shreveport it hurts my feelings because I never have been treated that way before. I had never been accused of trying to beat anyone out of anything before."

The authorities sustain the verdict of the jury as not being excessive. In Cincinnati, N. O. & T. P. R. Co. v. Harris, 115 Tenn. 501, 91 S. W. 211, 5 L. R. A. (N. S.) 779, a verdict of $1,800 was approved, where a woman passenger was threatened with eviction from the train, and the privacy of her sleeping berth was disturbed by the conductor. In Gulf, C. & S. F. R. Co. v. Moody (Tex. Civ. App.) 39 S. W. 988, a verdict of $1,250 actual damages for wrongful eviction of a male passenger was approved. In Southern Kansas R. Co. v. Wallace (Tex. Civ. App.) 152 S. W. 873, a verdict of $1,000 for wrongful eviction was sustained, where the language used was as follows:

"You can't ride on a baggage check on my train. It takes tickets to ride on this train."

In Texas & P. R. Co. v. Lynch (Tex. Civ. App.) 73 S. W. 65, a verdict for $1,500 was sustained where a male passenger was evicted before the other passengers and carried out by the negro porter. In Chicago, R. I. & G. R. Co. v. Carroll (Tex. Civ. App.) 151 S. W. 1116, a verdict of $1,500 was sustained on a showing that a lady passenger was evicted at 5:30 o'clock in the morning at a strange station. In International & G. N. R. Co. v.

Henderson (Tex. Civ. App.) 82 S. W. 1065, a verdict of $1,000 was sustained where the passenger, a negro man, had been abused by a group of intoxicated white men, although there was no physical injury. In upholding the verdict the court said:

"The plaintiff was clearly entitled to the amount recovered, if not more."

Affirmed.