Williams vs. Palace Car Company et als.

No. 10,008.

HENRY E. WILLIAMS VS. PULLMAN PALACE CAR COMPANY ET ALS.

| 40 | 417 |
| 50 | 651 |

In dealing with matters of litigation growing out of the construction of railway law, in connection with railway accidents, the Supreme Court of Louisiana will endeavor to place its rulings in line and in harmony with the adjudications of the Supreme Court of the United States, and of the courts of last resort of the States of the American Union, in all cases in which they do not conflict with the special and exceptional system of laws prevailing in Louisiana.

In cases involving the responsibility of a common carrier, such as a railway company, for injuries sustained by one of its passengers, the porter, and other employees of a Pullman Car Company, forming part of the railway company's train, will be considered as the servants and employees of the railway company.

Their negligence, or the negligence of either of them, as to any matters involving the safety and security of passengers, while being conveyed, is the negligence of the railroad company. Pennsylvania Company vs. Roy, 102 U. S. 451; Thorpe vs. N. Y. & H. R. R. Co., 76 N. Y. 402.

A railway company is liable in damages for a wanton and malicious assault by one of its servants on a passenger. 57 Maine, 202, Goddard's case.

A railway company is responsible for injuries received by one of its passengers at the hands of a porter of a sleeping car, forming part of the railway company's train, if it appears that said passenger was not a trespasser on the sleeping car.

APPEAL from the Civil District Court for the Parish of Orleans. Tissot, J.

W. S. Benedict and Read & Goodale for Plaintiff and Appellant:

Quoted the following authorities, viz. Thorpe vs. N. Y. C. R. R. Co. 76 N. Y. 402; Case of Goddard, 57 Maine; Baltimore City Railroad Company vs. Kemp, 61 Maryland 619; Railroad Company vs, Fenney, 10 Wisconsin, 388; 4 Gray, Mass. 365; Penn. Railroad vs. Van Dives, 42 Penn. State Rep, 365; Weed vs. Panama, 17 N. Y. 362; Railroad Company vs. Derby, 14 How. U. S. 468; Pittsburg Railroad Company vs. Hinds, 53 Penn. State. 512; Woods' Treaties on Railway Law, Vol. 2, p. 1179. · 3 Woods' Railway Law, Sec. 366, p. 1422, the rule is stated to be that the railway company is liable for the acts of the servant of the sleeping car company, whose car is attached to its train, and it cannot shield itself from liability upon any ground, especially in cases where the whole train is under the management of the railway company. Landeaux vs. Bell, 5 Louisiana, 434; Chamberlain vs. Chandler, 3 Mason, U. S. Circuit Court Reports.

Percy Roberts and Farrar & Kruttschnitt for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J.  This appeal presents plaintiff's claim for damages against the Louisville, New Orleans and Texas Railway Company for personal injuries received by him at the hands of the porter of the Pullman Car Company, on the 23d of November, 1885, while he was a passenger of the railway company between Zachary station and Baton Rouge.

His demand was against both companies in solido, but on motion sep-

arate trials were granted, resulting in a verdict in his favor against the Pullman Company, and in the other case in a verdict in favor of the railway company.

On appeal to this Court, the judgment in his favor and against the Pullman Company was reversed and his demand rejected. His present appeal is from the judgment below which rejected his demand against the railway company.

The pleadings and the evidence are the same in both cases, and as they are stated with precision and at length in our opinion in the first case, they need not be repeated here. (See Henry E. Williams vs. Pullman Palace Car Company et als., No. 10,008).

It is in proof, and it is not disputed, that plaintiff had paid his fare, as a passenger on the defendant's train, and that he was as such entitled to all the privileges and to the protection which a common carrier or transporter owes to its passengers.

Defendant's main contention is that plaintiff was a trespasser in the Pullman car, and that he thereby forfeited his right to protection from the railway company, according to the terms of his contract of transportation.

Under our understanding of the issues presented by the pleadings, plaintiff's right of recovery against the railway company hinges upon the proper construction of the two following questions:

1. Can the railway company be held liable for the acts of an employee of the Pullman car company under any circumstances?

2. Was plaintiff a trespasser on the Pullman car when he was struck by the porter, or was he THERE entitled to the full protection of the railway company as one of its passengers?

I.

An extended review of decisions of American courts has brought to our attention several adjudications which hold the affirmative of the first question which we are called to discuss in this case.

In one of those decisions the following principle is announced:

"Passengers upon a railroad, taking a drawing-room car, have a right to assume that they are there under a contract with the railroad corporation, and that the servants in charge of the car are its servants, for whose acts in the discharge of their duty it is liable." 76 N. Y. Reports, Thorpe vs. N. Y. & H. R. R. R. Co.

The substantial facts of that case were: that a passenger on one of the defendant's trains, finding all the seats occupied in the ordinary or day coaches, walked into a drawing-room car, attached to, and forming part of, the train, and took a seat therein. When called upon by

the porter to pay the extra charge for a seat in that car, he refused to pay the sum demanded for the reason that he could find no seat elsewhere; whereupon the porter attempted to eject him from the car, and for this assault he brought a suit for damages. On appeal from a judgment in his favor and against the railway company, the Court of Appeals of New York recognized his cause of action and enforced the liability of the railway company for the acts of the porter or employee of the drawing-room car company. Among other things the Court said :

" The general principle is well settled, that to make one person responsible for the negligent or tortious act of another, the relation of principal and agent, or master and servant, must be shown to have existed at the time, and in respect to the transaction between the wrong-doer and the person sought to be charged. The defendant relies upon the absence of this relation between the porter and the company as conclusive against its liability for his acts. But we are of opinion that this defense is not available to the defendant, or rather that the persons in charge of the drawing-room car are to be regarded and treated, in respect of their dealings with passengers, as the servants of the defendant, and that the defendant is responsible for their acts to the same extent as if they were directly employed by the company."

Sanctioning the same rule, the Supreme Court of the United States enforced the liability of a railway company for damages received by one of its passengers while he occupied a seat in a Pullman company car attached to the defendant's train. The accident had been caused by the falling on the head of the passenger of the upper berth of the sleeping car, and was due to the unsafe condition of the brace or arm which supported the upper berth, and which was afterwards found to be broken. Pennsylvania Company vs. Roy, 102 U. S. 451.

In dealing with the question which now concerns us, the Court said :

" The undertaking of the railroad company was to carry the defenfendant in error over its line in consideration of a certain sum, if he elected to ride in what is known as a first-class passenger car; with the privilege, nevertheless, expressly given in its published notices, of riding in a sleeping car, *constituting a part of the carrier's train,* for an additional sum paid to the company owning such car.

" As between the parties now before us, it is not material that the sleeping car in question was owned by the Pullman Palace Car Company, or that such company provided at its own expense a conductor and porter for such car, to whom was committed the immediate control of its interior arrangements. The duty of the railroad company was to convey the passenger over its line. In performing that duty, it

could not consistently with the law and the obligation arising out of the nature of its business, use cars or vehicles whose inadequacy or insufficiency, for safe conveyance, was discoverable upon the most careful and thorough examination. * * * For the purposes of the contract under which the railroad company undertook to carry Roy over its line, and, in view of its obligation to use only cars that were adequate for safe conveyance, the sleeping car company, its conductor and *porter, were, in law, the servants and employees of the railroad company.* (Italics are ours.) Their negligence, or the negligence of either of them, as to any matters involving the safety or security of passengers while being conveyed, was the negligence of the railroad company."

In a case predicated on similar facts the Supreme Court of Ohio applied the same rule. Columbus R. R. Co. vs. Walrath, 38 Ohio St., 461.

Commenting on the preceding, and other, adjudications, Wood, in his work on Railway Law, has formulated the rule as follows:

"The practice of running trains controlled by two separate and distinct corporations has become quite common in this country, and as a result, questions as to the relative liability of these corporations will be likely often to arise."

It has been held in several cases that when a passenger has purchased a ticket of a parlor-car company, entitling him to ride in its car, and also a passage ticket of the railway company, the railway company is to be regarded as liable for the negligence of the palace car company; and that its servants are to be treated as the servants of the railway company in everything that regards the safety and security of the passenger. Wood's Railway Law, p. 1442, Sec. 366.

Believing that in a question of such vast importance, on matters of litigation likely to arise in all parts of the American Union, this Court should seek to place its rulings and jurisprudence in line and in harmony with those of the Supreme Court of the United States and of the courts of last resort of our sister States, wherever those decisions do not militate against the principles of our special and exceptional system of laws, we deem it our duty, without hesitation, to adopt the conclusions which so clearly flow from the highly respectable authorities to which we have just referred, and from which we have thought it proper and useful to make the foregoing copious quotations.

Applied to this case, in which it appears that the Pullman car was attached to the defendant's train, under the same circumstances, rules and regulations, and for the same purposes as shown in the cases

hereinabove mentioned, the rule of law thus sanctioned leads to the legal conclusion that for the purposes of this contention, the porter of the sleeping car, by whom Williams was stricken down and injured, must be treated as being at the time a servant or employe of the defendant company, and as such entrusted with the duty of contributing in the performance of his legitimate duties, to the safety and security of the passenger which the railway company had undertaken to carry safely over its line.

Hence it follows that the railway company must be held liable for injuries sustained by one of its passengers through the negligence or fault or other acts of the porter in question. And, under well established jurisprudence, it is equally clear and logical that such liability extends to and embraces injuries inflicted on the passenger by means of a willful and malicious assault by a railroad employe on the passenger.

That responsibility is the subject of a very able and masterly discussion by the Supreme Judicial Court of Maine in the case of Goddard, 57 Maine, p. 202, in which a passenger was allowed exemplary, as well as compensatory, damages for gross insults heaped upon him by a brakesman on the train on which he was then travelling. In that opinion, from which we made copious extracts in our previous decision, (No. 10,008), the Court enforced the rule that "a common carrier of passengers is responsible for the willful misconduct of his servant toward a passenger."

"A passenger who is assaulted and grossly insulted in a railway car by a brakeman employed on the train, has a remedy therefor against the company."

In Pennsylvania R. R. Co. vs. Vandiver, 42 Pa. St., 365, the railway company was held liable for injuries inflicted on a passenger by a violent ejectment from the train.

A like responsibility was decreed against the railroad company for injuries sustained by a lady passenger in a general fight between drunken passengers in the coach in which she occupied a seat, on the ground that the conductor had not used the proper means to quell the disturbance. Pittsburg, Ft. W. and C. R. R. Co. vs. Hinds, 53 Pa. St. 512.

Our own jurisprudence has sustained an action by a lady passenger against the owners of a vessel for insulting and abusive language used to her and about her by an employe of the common carrier. The principle is thus summarized in that opinion: "The master of a vessel is liable for the indecent and inhuman conduct of himself and of his crew, excited by him towards a passenger."

"Owners of vessels carrying passengers for money, are subject to the same responsibility for a breach of duty by their officers to the passengers, as they would be in regard to merchandise committed to their care." Keene vs. Lizardi et als., 5 La., 431.

We therefore conclude that the case is with plaintiff unless it should appear that he was a trespasser on the Pullman car when the incident occurred resulting in his injuries.

II.

And this brings us to the consideration of the second question involved in the controversy. Under the result of our examination of the evidence as announced in our previous opinion, this question offers no difficulty in the present case.

We said on that subject: "We do not lose sight of the fact that plaintiff was not a trespasser, but had a right to enter the car for the purpose of asking permission to wash his hands, or of trying to have the privilege, and that in addressing the porter he was dealing with him as a servant of the company."

A second examination of the record has had the effect of confirming the correctness of that conclusion.

The preponderance of the evidence on that point, although very conflicting, shows to our entire satisfaction that plaintiff did ask permission of the porter to wash his hands, and that after an exchange of a few unpleasant words, the porter struck him on the head with a blunt instrument, while plaintiff was standing at the threshold of the door of the Pullman car. He was stunned by the blow, which felled him to the platform, whence he was picked up and brought to the forward car by one of his friends. His testimony as to the main features of the incident is corroborated by that of two other witnesses, although no witness saw the whole incident.

Hence we conclude that the attack was unprovoked, unjustifiable and willful on the part of the porter, for whose conduct the defendant company must be held liable in damages.

As the Pullman Car Company, the immediate and direct, employer or master of the wrongdoer, has been shielded from responsibility by our previous decree, the case may be a hard one on the defendant, but under the authorities by which we have been guided, the hardship appears inevitable. Our ruling in that case rested on the pivotal feature that there existed no contractual relations between plaintiff and the company. Our conclusions find ample support in the decision of the case in 76 N. Y., hereinabove referred to, in which the railway company was made to respond for the ejectment of a passenger from the

drawing-room car, in which he claimed the right of occupying a seat without paying therefor.

On this point we quote from the opinion of the Supreme Court of the United States in Roy's case, 102 U. S. 458, the following utterances:

"Whether the Pullman Car Company is not also and equally liable to the defendant in error, or whether it may not be liable over to the railroad company for any damages which the latter may be required to pay on account of the injury complained of, are questions which need not be here considered. That corporation was dismissed from the case, and it is not necessary or proper that we should now determine any question between it and others."

Under all the circumstances of the case we hold that plaintiff is entitled to recover damages in the sum of one thousand dollars.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided, reversed and the verdict of the jury set aside, and it is now ordered that plaintiff do have and recover judgment of the defendant, the Louisville, New Orleans and Texas Railway Company, in the sum of one thousand dollars, and for costs in both courts.