MRS. FLORENCE M. HALL AND JOHN L. HALL, HER HUSBAND, *Plaintiffs in Error,* vs. SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, *Defendant in Error.*

Opinion Filed August 15, 1921.

Petition for rehearing granted October 14, 1921.

Judgment affirmed June 21, 1922.

Petition for rehearing denied July 27, 1922.

1.  Passengers upon railway trains have by virtue of their contract for transportation the right to be treated by the servants and employees of the carrier with kindness, respect, courtesy and due consideration and to be protected against insult, indignity and abuse from such servants and agents.

2.  A carrier's liability to a passenger for indignities offered to the latter by the agents and employees of the carrier rests upon the duty it owes through such servants and not for the reason that the act is incident to a duty within the scope of the servants employment.

3.  The rule announced in the foregoing headnotes applies with special strictness to women passengers. Her contract of pas-

sage embraces a stipulation implied that the corporation will protect her against wanton approach from servants or employees of the carrier engaged in the general business of transportation.

4.  A carrier's liability as insurer against indignities offered to a passenger by its employees rests upon the relation which such employees bear to the carrier as persons whom it has employed in the general transportation of passengers.

5.  A stenographer employed in the office of a Division Superintendent and whose duties are purely clerical with power to exercise no authority or provide any arrangement for the comfort, protection and assistance of passengers is not classed as an active agent of the corporation in its active work of transporting passengers. And an assault made by such employees upon a fellow passenger on a train does not fall within the rule which makes the carrier's liability to the passenger assaulted that of an insurer.

6.  A carrier of passengers is held to the highest degree of care, vigilance and precaution in making arrangements to guard against all dangers from whatever source arising which may naturally and according to the usual course of things be expected to occur.

7.  A conductor or person in charge of a railway train is invested with the powers of a peace officer to protect passengers from asault by fellow passengers or by strangers and he must exercise such powers faithfully or the carrier will be deemed guilty of negligence and must answer for any injury inflicted by such passengers.

8.  The liability of the carrier in such case rests not upon the tort of the passenger but upon the negligent omission of the carrier through its servants to prevent the tort from being committed.

9.  In guarding a passenger from a danger which is not usual, or not incident to ordinary travel, the carrier is held to the use of ordinary and reasonable care and diligence. It is the

failure of the carrier through its agents to afford the required protection after such agents had reasonable grounds for believing that violence or insult was imminent upon which the liability of the carrier rests. It is not the fact of injury to the passenger that fixes the carrier's liability. The injury must have been of such character and inflicted under such circumstances as that it might have been reasonably anticipated or naturally expected to occur.

10. It is not to be assumed that the mere presence of a man and a woman in a car in which there are no other passengers is a situation fraught with danger to the latter in the absence of some external indication of the former's character.

A Writ of Error to the Circuit Court for Duval County; George Couper Gibbs, Judge.

Affirmed.

*George M. Powell* and *Giles J. Petterson,* for Plaintiffs in Error.

*Fleming & Fleming,* for Defendant in Error.

WHITFIELD, J.—In action to recover damages for an assault made upon Mrs. Florence M. Hall while a passenger upon the railroad company's train, trial was had upon four counts of the declaration and the plea of not guilty to each count. The latter two of the counts are regarded as abandoned. The first two counts are in substance as follows: That the plaintiff, Florence M. Hall, "boarded and became a passenger on a train of this defendant and was shown to a berth in the sleeping car attached to said train of this defendant by an agent or servant of this defendant; that said plaintiff, Florence M. Hall, retired to said berth for the night; that directly across the aisle from this plaintiff at that time was one Bruce Davis; that

the said Davis did wantonly, wilfully and maliciously, with force and arms, assault said plaintiff while she was lying in her said berth by violently grasping the plaintiff and by forcibly entering her berth and grappling with her; that before the said Davis entered the plaintiff's berth this plaintiff did push the button of the electric call system provided for passengers in said berth, and called for help, and did repeatedly and frantically continue to push said bell and call out for help, but none came; that there was on said car a porter, the servant or agent of this defendant company, and that it was then and there the duty of said porter to answer the calls given and bells rung by passengers, and to answer the rings of the bell and calls for help of the said plaintiff, Florence M. Hall, as aforesaid; and that said porter heard the ringing of said bell and said calls for help of said plaintiff, Florence M. Hall, and could have answered and responded to said calls and bells in time to have prevented the assault herein alleged; but that said porter did maliciously, wilfully and wantonly fail and refuse to respond to the plaintiff's said frantic and continued calling and ringing for help, as aforesaid; and that the said Davis was enabled thereby to make the said assault upon this plaintiff and to forcibly and violently enter the berth occupied by this plaintiff and did then and there violently grasp the plaintiff and forcibly enter the berth occupied by her against the peace and dignity of the State of Florida, thereby bruising and ill treating the said plaintiff; that in the course of the struggle of said plaintiff to free herself from the embraces of the said Davis, the plaintiff was precipitated to the floor of said car and was thereby wounded and bruised; that by reason of the failure of the said porter to respond to and answer the said plaintiff's rings and calls for help as aforesaid, and by reason of the failure of the said porter to prevent the said injuries

to plaintiff as aforesaid and to protect said plaintiff as it was then and there the duty of said porter and the said defendant to do under the circumstances, this plaintiff was then and there assaulted, humiliated and insulted and seriously injured in feeling and reputation and brought into public scandal and disgrace and did suffer great physical and mental pain, anguish and nervous strain and that said plaintiff has so suffered in mind and body at all times between said date and the date hereof and is still suffering and has continued to suffer as aforsesaid.''

The other count is similar to the foregoing, except that it is alleged that the ''porter carelessly and negligently, failed to answer said calls and bell signals as alleged and that by reason of said carelessness and negligence of said defendant, its agents and servants in failing to answer said calls for help and bells, the said plaintiff was subjected to said assault by said Davis,'' &c.

The plaintiff testified: ''I had been asleep not awfully long when I felt a hand touch me here, (indicating) and I hollowed and said, 'Is that you, porter?' and I rang the bell and called for help and I kept ringing the bell and looked out at the curtain and I saw a foot opposite my berth dart into the other berth,—lower eight, right opposite me and this foot was a white man. I first thought it might be the porter. I was frightened and I hollowed, 'Is that you, porter?' but when I saw this foot, I hollowed again and called for help and kept ringing the bell, and—oh, it was sometime, no one came at all and I said, 'If there is anybody in this car, will they please come to my rescue,' and no one still came. With that, this man just made some remark and jumped into the berth again and grabbed me here, (indicating) and we went all over the car and all over the floor. It was several minutes I was still scuffling

with him, hollering and screaming for help and no one came for a long time. Finally, the negro porter did come in, got into this car, this man jumped up and ran towards the smoking room or to that end of the car, and I asked this negro man why he didn't come to my rescue." * * * "I screamed very excitedly. I was excited and I knew there was danger and naturally I would scream very loud and I did scream very loud, and I called for help in the car and said, 'For God's sake, if there is anyone in this car, come to my rescue,' and realizing there was no one else in the car but this man and myself, had no other passengers. The time that elapsed between my screaming and ringing the bell for help and the second affront by this man Davis was from five to ten minutes at least, from the time I first rang and called for help to the time he came back, was about ten minutes, some five or ten minutes. The second time he came to me. He came to my berth twice. The first time he ran back into his berth and the second time— and then is when I did the screaming and calling and hollering—and the second time he came in we did the fighting. That was Bruce Davis. After the porter came back, failing to find the Pullman conductor, I went up and found the train conductor in the day coach. I think it was the next car. I am not absolutely sure of that. I didn't find the Pullman conductor. He was nowhere about the car. I first saw the conductor after the incident—it was a few minutes, he came back into the car."

The court on motion struck the following testimony of the plaintiff: "I (meaning the plaintiff, Florence M. Hall) asked this negro man (referring to the porter of the Pullman car) why he did not come to my rescue, and he told me that he had been sent to bed by the conductor, and said the conductor was supposed to be on duty and had told him not to come. He said he heard my calls but he had been

told not to come.'' ''That a little while after the assault
alleged in the declaration, that the porter of the Pullman
car of which she was a passenger, came to her and said,
'Lady, I would like to tell you a lot of things, I am awfully
sorry to see you in that condition,' and that the porter then
and there first stated that he wanted her, the plaintiff, to
know why he did not answer the bell, and said that he, the
porter, had to take his orders from the conductor, and
that he had ordered him to go to bed and said, that the
conductor would be on duty; that the porter further said
'I heard the bell and I heard the screams, I am only a
negro and have to take my orders from the conductor.' ''

At the conclusion of the plaintiff's testimony the de-
fendant moved for a directed verdict in its favor on
grounds that there was no proof that the porter was on
the car or that he heard the bell or the calls for help in
time to have prevented the assault. The court granted the
motion and directed a verdict for the defendant, on which
final judgment for the defendant was rendered, and the
plaintiffs took writ of error.

The liability of a railroad common carrier for, assaults
upon its passengers by its emplyee who is not connected
with the operation of the train or with the care and safety
of the passengers, but who is being transported as a pas-
senger in connection with the carrier's other business, in
the absence of special circumstances that impose a different
rule of liability, may be somewhat analogous to the car-
rier's liability for an assault on a passenger by another
passenger who is not an employee of the carrier. See
Alabama Great Southern R. Co. v. Pouncey, 7 Ala. App.
548, 61 South. Rep. 601; Penny v. Atlantic Coast Line R.
Co., 153 N. C. 296, 69 S. E. Rep. 238, 32 L. R. A. (N. S.)
1209; Southern R. Co. v. Crone, 51 Ind. App. 300, 99 N.
E. Rep. 672. See 30 South. Rep. 456; 50 South. Rep. 55.

Where a railroad company has attached to its train a Pullman or sleeping car, and such car contains passengers who occupy berths therein, it is the duty of the carrier to exercise the highest degree of care commensurate with the circumstances which impose the obligation to give security, comfort and convenience to the passangers, and to exercise all reasonable care and diligence for the protection of passengers from assaults or insults by other passengers.    See Pelot v. Atlantic Coast Line R. Co., 60 Fla. 159, 53 South. Rep. 937.    Particularly is this the measure of the carrier's duty when ladies are passengers without escorts and the travel is at night.    In this case the plaintiff and her assailant were the only passengers on the sleeping car.

The fact that the sleeping car accommodations are furnished by another company does not relieve the carrier of its duty in the premises even though the other company may also be liable.    10 C. J. 1179.    The carrier's duty may be performed by the employees of the other company who are engaged on the sleeping cars.    The employees of such other company in charge of the sleeping cars may be regarded as the employees of the railroad carrier for the purpose of safe guarding passengers in the pullman or sleeping car.    3 Mechem on Carriers, pp 2074 and 2620; Louisville & N. R. Co. v. Church, 155 Ala. 329, 46 South. Rep. 457; Pennsylvania Co. v. Roy, 102 U. S. 451. Among the duties of the carrier is the exercise of due care to have some proper person or persons present or conveniently near and attentive to prevent irregular conduct or offensive behavior of passengers towards each other and to respond to calls for assistance in cases where passengers are assaulted or offended by other passengers.    See Southern R. Co. v. Hanby, 183 Ala, 255, 62 South. Rep. 871; Wright v. Georgia Southern & F. R. Co., 66 Fla. 510, 63 South. Rep. 909.    An assault or an offense might be committed upon

a passenger by another passenger so suddenly, or under special circumstances of an emergency or other unusual occasion, that the carrier's employees could not reasonably prevent it or could not immediately respond to calls for assistance. In such cases liability *vel non* of the carrier may depend upon whether under the special circumstances the full duty of the carrier was reasonably performed. Where a substantial injury or an unlawful assault is shown to have been suffered by a passenger by the misconduct of another person on the train, that reasonably should have been prevented by the carrier's employees, the burden may be upon the carrier to show the exercise by its employees in charge of the train or of the passengers of due care and diligence in protecting the passengers, the particular circumstances being considered in determining the measure of the carrier's duty in the premises.

This rule of liability is predicated upon the circumstances that when persons are passengers of a railroad common carrier they must occupy cars in which other persons, not of their selection, are also passengers, and while being transported all passengers must conform to the reasonable requirements of the carrier that are essential to common safety in transit, thereby rendering all passengers the less able to avoid or to prevent assault or insult by other passengers; and because of this the carrier through its employees has authority to preserve reasonably decorous behavior among passengers for the safety and comfort of all passengers. From the authority to preserve order that is incident to the safe and comfortable transportation of passengers, flows the correlative duty implied by law to exercise all reasonable care and diligence in the premises, and the law imposes a corresponding liability for reasonable damages for failure to discharge the appropriate duty.

In this case the pleadings in substance if not with precision, tendered an issue that should have been submitted to the jury with appropriate instructions to determine whether the employees for whose acts and ommissions in the premises the defendant carrier was responsible, exercised all reasonable care and diligence under the circumstances of the case, to be within calling reach to render the assistance needed and called for by a sole lady passenger who while occupying her berth at night was assaulted and injured by a person who occupied another berth in the car.     While the initial assault might have been so unusual or of such a nature as not to have required the carrier's employees to have anticipated it, yet the alarm given should have been responded to with reasonable promptness and efficiency by at least one of the employees, the pullman conductor or his subordinate, whose duty it was to be diligent in guarding the safety and comfort of the passengers particularly under the circumstances disclosed in this record.     See 116 Tenn. 580; 4 Mechem on Carriers, p. 3209; Vol. 3, p. 2074, Sec. 2620; 89 S. C. 287; 42 Fed. 484; 4 R. C. L. 1174 et seq.; 10 C. J. 1179; 2 Hutch. on Carriers, Sec 1101.

As the duty of the carrier required it to exercise all reasonable care to have proper employees conveniently near to promptly respond to calls for help from passengers who are assaulted in their sleeping berths at night, it was not necessary to allege or to prove that such an employee was upon the train or in the car or that he heard the call for help.     It is enough to allege and prove an assault and that a sufficiently urgent call for help was made and that it was not responded to within a reasonable time.     On such a showing under the circumstances it was encumbent upon the carrier to show sufficient reasonable excuse for the failure of the employee to respond to such a call as was made.

Whether Davis be regarded as an employee or as a mere passenger the carrier should under the circumstances have had an employee on the car ready to respond to calls for protection should occasion arise during the night from any cause; and though such an assault be most unusual, sleeping passengers particularly ladies traveling alone at night and occupying a berth in a sleeping car, should be protected at all hours by having proper persons on guard to promptly respond to emergency calls for help.

Without discussing at length the pleadings and the rulings of the court thereon, the above statements of the law that are applicable to the facts and circumstances of the case as far as they appear by the transcript, clearly indicate the error in directing a verdict for the defendant after excluding evidence that, though unnecessary to be adduced, yet tended to show that the defendant's porter was in the car and reasonably should have responded to the plaintiff's call for help before the completion of the injuries that resulted from the second assault. The initial assault may have been so unexpected as to excuse the defendant's employee from not anticipating or preventing it; but the call for help immediately after the first assault reasonably should have been responded to, unless the carrier can show that because of other unusual or unforeseen circumstances, it was impracticable for the porter or other proper employee to respond in time to prevent the injury that was incident to the second assault.

Reversed.

TAYLOR AND WEST, J. J., concur.

BROWNE, C. J. AND ELLIS, J., dissent.

ELLIS, J.—Dissenting.

Mrs. Hall was a passenger on defendant's train from Tampa to New York, she had purchased a pullman ticket which entitled her to occupy a lower berth in the pullman car attached to the train.. A man named Bruce Davis, who was employed by the defendant as stenographer to the Division Superintendent of that division of the railroad which included the line from Tampa to Jacksonville, was also a passanger upon the train and occupied a berth in the same pullman car. This man Davis and Mrs. Hall were the only two occupants of the car. Davis was upon an errand of the defendant but not engaged in the operation of the train nor a member of its crew. He was upon his way to Gainesville to perform some service there for the defendant in the matter of taking down and reporting the proceedings in a certain controversy between the defendant and East Florida Telephone Company involving a trespass by the latter, then pending at the city of Gainesville. The fact that Davis and Mrs. Hall were the only two occupants of the car was known to the conductor of the train, and the conductor and porter of the pullman car. During the night Davis entered the berth occupied by Mrs. Hall to which she had retired for the night and assaulted her. Mrs. Hall repeatedly pushed the electric button provided for summoning the porter and called for help but there was no response. Under these circumstances was the defendant liable in damages for the injury to the feelings of Mrs. Hall which resulted from the insult and humiliation suffered by her from the assault by Davis? And upon what ground does such liability rest? First, is the defendant liable because of the assault by Davis, which was unlawful, without consideration of any other element of the transaction, than that the two were passengers upon the same train and in the same car and that Davis was an employee of the defendant in the capacity stated? Second, was the de-

fendant liable because of the failure of the porter or conductor to respond to Mrs. Hall's call for help and her repeated summoning of the porter by pushing the electric button?

These are the questions which I conceive to be presented by the record. If the defendant is liable upon the first proposition the second need no be answered. Passengers do not contract merely for transportation but have the right to be treated by the servants of the carrier with kindness, respect, courtesy and due consideration and to be protected against insult, indignity and abuse from such servants and agents. Goodloe v. Memphis & C. R. Co., 107 Ala. 233, 18 South. Rep. 166; Chicago & Eastern R. R. Co. v. Flexman, 103 Ill. 546; Bryant v. Rich, 106 Mass. 180; Gillespie v. Brookland Heights R. C., 178 N. Y. 347, 70 N. E. Rep. 857; White v. Norfolk & S. R. Co., 115 N. C. 631, 20 S. E. Rep. 191; Knoxville Traction Co. v. Lane, 103 Tenn. 376, 53 S. W. Rep. 557.

The use by an employee of insulting language or such discourteous conduct on the part of an employee toward a passenger gives to the latter a right of action against the carrier for damages. Bleecker v. Colorado & S. R. Co., 50 Colo. 140, 114 Pac. Rep. 481; Mabry v. City Electric Co., 116 Ga. 624, 42 S. E. Rep. 1025; Chesapeake & O. R. Co. v. Bowling, 149 Ky. 307, 148 S. W. Rep. 46; Williams v. Pullman Palace Co., 40 La. Ann. 417, 4 South. Rep. 85; Lamson v. Great Northern Ry, Co., 114 Minn. 182, 130 N. W. Rep. 945, Ann. Cas. 1914 A. 15; Haver v. Central R. Co. of New Jersey, 62 N. J. L. 282, 41 Atl. Rep. 916; Gillespie v. Brookland Heights R. Co., supra; Cincinnati N. O. & T. P. R. Co. v. Harris, 115 Tenn. 501, 91 S. W. Rep. 211; Davis v. Tacoma Ry. & Power Co., 35 Wash. 203, 77 Pac. Rep. 209. The rule applies with special strictness to

women passengers.   Her contract of carriage embraces a stipulation implied that the corporation will protect her against wanton approach.    Savannah, F. & W. Ry. Co., v. Quo, 103 Ga. 125, 29 S. E. Rep. 607; Louisville & N. R. Co. v. Ballard, 85 Ky. 307, 3 S. W. Rep. 530; Craker v. Chicago & N. W. Ry. Co., 36 Wis. 657.    The liability of the carrier is held to apply not only where the assault was in line of the employee's duty, but where the act was that of an individual and entirely disconnected from the performance of the employee's duty as where a conductor assaults a female passenger. Craker v. Chicago & N. W. Ry. Co., supra.

The carrier's liability in such cases rests upon the duty it owes through its servants to the passengers, and not for the reason that the act is incident to a duty within the scope of that servant's employment.    Thayer v. Old Colony St. R. Co., 214 Mass. 234, 101 N. E. Rep. 368. The duty the carrier owes to a passenger is affected by the relation of master and servant because in the case of an assault by a servant the carrier is held practically to the liability of an insurer as to wilful assaults.    New Jersey Steamboat Co. v Brockett, 121 U. S. 637, 7 Sup. Ct. Rep. 1039; Mason v. Louisville, C. & St. L. R. Co., 135 Ga. 741, 70 S. E. Rep. 225; Hayne v. Union St. R. Co., 189 Mass. 551, 76 N. E. Rep. 219; O'Brien v. St. Louis Transit Co., 185 Mo. 263, 84 S. W. Rep. 939; Haver v. Central R. Co. of New Jersey, *Supra;* Zeccardi v. Yonkers R. Co., 190 N. Y. 389, 83 N. E. Rep. 31; Spellman v. Richmond & D. R. Co., 35 S. C. 475, 14 S. E. Rep. 947.


Some authorities apply the doctrine of liability for assault not only to those cases where the servant is immediately engaged in carrying out the contract of carriage but to all who are engaged in the general business of transportation, and an assault by any of them is a breach of the

carrier's duty to protect.    Hayne v. Union St. R. Co., *supra;* 3 L. R. A. (N. S.) 605.

The subject is fully discussed in 4 R. C. L. under the title Carriers and in 40 L. R. A. (N. S.) 999.    Counsel for defendant in error contended that the relation of the carrier to a passenger as insurer of the latter from assaults, insults and indignities exists only when as between the carrier and the person guilty of committing the act complained of the relation of master and servants engaged in the general work of transportation exists.    I think this is the correct doctrine and the one supported by authority and reason.    Because aside from the doctrine or respondeat superior under which the carrier is held liable for an injury resulting from an act on the part of its agent within the scope of the latter's authority, whether the act be one of omission or commission, the carrier is liable because its contract of transportation entered into with a passenger places upon it the responsibility of insurer of the latter against any act of commission or omission on the part of its agents whom it has employed in the general business of transportation of passengers.    Out of this relation only grows the carrier's liability of insurer.

If the act complained of had been committed by a conductor or any one of the train crew, then the carrier's obligation to protect the passenger from unkindness, disrespect, insult and assault during the passage or trip would have been violated, because the carrier in effect says to the passenger : this corporation has employed in its business of transportation of passengers, competent, efficient, prudent, courteous, polite and respectful employees and during your trip you will be protected from the results of inefficiency, imprudence, discourtesy and all improper advances.    It would be entirely immaterial, trifling and vain to say in

such case that the conductor's assault was not within the scope of his employment, because the carrier's liability in such case rests upon an entirely different and independent theory. It would be equally unreasonable to say that the carrier would be liable upon the same theory, that of insurer, in a case where a party of employees from a section gang, or freight yard, or office force, boarded the train and robbed passengers of their property at the point of a pistol, or where one of such employees was a member of the party, and where the attack was so unexpectedly and suddenly made that the carrier could not provide protection.

The case of Hayne v. Union St. R. Co. *supra,* is authority for the doctrine that this rule of the carrier's liability includes not only those agents of the carrier who are charged by it with personal attention to the passenger, but all employees engaged in the general business of transportation, and involves a duty to refrain from doing injury to any of the carrier's passengers, whether in the special charge of the servant or not.

Measured by the rule announced in that case, which seems to mark the limit to which the rule is carried. I think the defendant is not liable upon the first proposition, Because a stenographer who is employed in the office of division superintendent and whose duties are purely clerical, with power to exercise no authority, or provide any arrangement for the comfort, protection and assistance of passengers can not be classed as an active agent of the corporation in its business of transportation of passengers.

If the assault had occurred in the office in which the man was employed and to which the plaintiff had gone to transact business with that department, the defendant might be liable upon the doctrine of respondeat superior, but merely because he was being transported by the defendent upon

an errand for it which does not appear to have been connected in any way with its business of transportation of passengers he can not be said to have been an agent of the company engaged in that branch of the service.    The case of Pelot v. Atlantic Coast Line R. Co., 60 Fla. 159 seems to place the liability not as an absolute one but existing only where the agent of the carrier is employed in the *management* of the conveyance.

I am of the opinion therefore that the defendant was liable if at all upon the second proposition.    The rule applicable to which is in substance, that the carrier is held to the highest degree of care, vigilance and precaution in making arrangements to guard against all dangers from whatever source arising which may naturally and according to the usual course of things be expected to occur.    See. 4 R. C. L. 1144—1181.

Could the defendant corporation by the exercise of proper care have foreseen and prevented the act of violence? The uniform and salutary rule adopted by the American Courts is that the conductor or person in charge of a railway train is invested with all the powers of a peace officer to protect passengers from assault by fellow passengers or by strangers; he must exercise such powers earnestly and faithfully, and if he fails in this duty and one passenger is assaulted by another, the conductor is guilty of negligence and the company must answer for the injury inflicted. See 4 R. C. L. 1183.

The liability of the carrier in such case rests not upon the negligent omission of the carrier through its servants to prevent the tort being committed.    A failure to do anything which could have been done by the servant to prevent the injury renders the carrier liable. But to do something to prevent an injury resulting from an assault by a

fellow passenger implies knowledge on the part of the servant that the act is contemplated by the stranger or by due diligence the servant could have obtained such knowledge, or had the opportunity to acquire it sufficiently long in advance of its infliction to have prevented it with the force at his command.    4 R. C. L. 1185.

In guarding a passenger from a danger which is not usual, or not incident to ordinary travel, the carrier is held to the use of ordinary. and reasonable care and diligence. It is the failure of the carrier through its agents to afford the required protection after they had reasonable grounds for believing that violence or the insult was imminent, upon which the liability of the carrier rests.    It is not the fact of injury to the passenger that fixes the carrier's liability. The injury must have been of such character and inflicted under such circumstances as that it might have been reasonably anticipated or naturally expected to occur.    See Exton v. Central R. Co., 63 N. J. L. 356; Batton v. South & North Ala. R. Co., 77 Ala. 591; Kinney v. Louisville & N. R. Co., 99 Ky. 59; Ill. Central R. Co., v. Minor, 69 Miss. 710, 11 South. Rep. 101, 16 L. R. A. 627; Felton v. Chicago, R. I. & P. R. Co., 69 Iowa 577; Brown v. Chicago R. I. & Pac. R. Co., 139 Fed. Rep. 972, 2 L. R. A. (N. S.) 105.

Applying this doctrine to the facts in the case, I think that the evidence wholly failed to prove the allegations of the second, third or fourth amended counts of the declaration or the additional counts, all of which rested upon the averment that the porter or the conductor heard the calls for assistance and failed to respond.    There is no allegation that under the circumstances either of them knew or could by reasonable diligence have become aware of the man's intention to assault the woman or her danger. And it can not be assumed that the mere presence of a man and a woman in a car in which there are no other apssengers

is a situation fraught with danger to the woman in the absence of some external indication of the former's character. If any such rule should be applied, it is easily conceivable that it would be subject to conceptions and limitations in such numbers that the main precept would be lost in the multiplicity of instances in which it would not apply.

BROWNE, C. J., concurs.

## On Rehearing.

PER CURIAM.—A rehearing having been granted in this cause, and the cause having again been submitted to the Court upon briefs and oral argument of counsel for the respective parties, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that the judgment of the Circuit Court should be, and is hereby affirmed upon the grounds stated in the opinion of Mr. Justice ELLIS, concurred in by the Chief Justice, heretofore filed in this cause, which now becomes the opinion of the Court.

Affirmed.

BROWNE, C. J. AND TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., dissent.