# CHARLESTON.

JENNIE THOMPSON v. MONONGAHELA RAILWAY COMPANY et al.

(No. 5252)

Submitted May 5, 1925.   Decided May 19, 1925.

1. CARRIERS—To Render Common Carrier Liable for Injuries Inflicted by Fellow Passenger it Must be Guilty of Negligence in Respect to Duties as Carrier.

   ' A common carrier of passengers, while held to the highest degree of care for their protection against injuries from its servants or fellow passengers, is nevertheless not an insurer of the passengers' safety; and to render the carrier liable for injuries inflicted by a fellow passenger, the carrier must be guilty of some negligence in respect to its duties as carrier. (p. 211).

   (Carriers, 10 C. J. §§ 1302, 1332).

2. SAME—Duty of Carrier to Protect and Carry Passengers Safely Does Not Impose Impossible or Unreasonable Protection.

   The very high degree of care ordinarily required of a carrier to protect and carry passengers safely does not impose impossible or unreasonable protection, something against which no skill or foresight can reasonably provide. (p. 211).

   (Carriers, 10 C. J. § 1302).

3. SAME—Fact that Passengers Had Been Observed by Trainmen Throwing Paper Wads at One Another and Warned to Abstain Therefrom Does Not Render Carrier Liable for Injury Inflicted by Passenger on Another with Tin Cup; Liability of Carrier for Injury Inflicted by One Passenger on Another by Throwing Tin Cup Rests Upon Negligent Omission to Prevent Commission of Tort.

   The fact that passengers have been observed by the trainmen, engaged in the amusement of throwing paper or paper wads at one another, and warned by them to abstain therefrom, will not render the carrier liable for an injury inflicted by one of the passengers upon another with a tin drinking cup unintentionally and accidentally thrown, and of which instrument the trainmen had no knowledge, or reason to believe it would be used in the commission of the act. The liability of the carrier in such case does not rest upon the tort of the passenger, but upon negligent omission of the carrier through its servants to prevent the tort from being committed. (p. 211).

Error to Circuit Court, Marion County.

Action by Jennie Thompson against the Monongahela Railway Company and another. Judgment for plaintiff, and the named defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Rollo J. Conley,* for plaintiff in error.
*Shaw & Shaw,* for defendant in error.

MILLER, JUDGE:

In the same action for personal injuries the plaintiff obtained a verdict and judgment for $5,000.00 against the defendant railway company, and $300.00 against the defendant Adam Ware, to which judgment against the railway company we granted a writ of error on the petition of the company. Ware, the other defendant, did not join therein, and is not here complaining of the judgment against him.

The injury complained of consisted of a wound, cut, bruise and laceration, on or near plaintiff's temple, over her right eye, alleged to have greatly injured the nerves and muscles of her face, from which cause she alleges she suffered great pain and endured mental anguish and became sick and sore and disabled from thence hitherto, and has been prevented from performing her usual duties as housewife and housekeeper, and whereby she also alleges the nerves located in the region of said wound were injuriously affected, her eyesight impaired, and that the nerves leading to her teeth were also greatly impaired, so that it became necessary for her to have her teeth extracted, and from which she suffered great pain and mental anguish, and from which she has become inflicted with chronic neuralgia in various parts of her body, and whereby also the "cranial nerve or nerve centers" has become injured and destroyed.

These injuries, the declaration alleges, were sustained by plaintiff, on April 23, 1922, while a passenger for hire on defendant's railway train between Pittsburgh, Pennsylvania, and Fairmont, West Virginia, by being struck on the head by a tin collapsible drinking cup which the defendant company negligently suffered and permitted the defendant Adam Ware, another passenger on the same car, to throw over,

through and across the car in which he and she with others were passengers, while he, the said Ware, with other passengers, without restraint of the defendant, were engaged in said car, in the disorderly conduct of throwing missiles of various kinds through and across the same, in the presence and view of the officers in charge of the defendant's train.

The train in question was a regular passenger train, operated between Fairmont, West Virginia, and Pittsburgh, Pennsylvania; but on the Sunday in question, the defendant sold tickets for that train between Fairmont and intermediate points to Pittsburgh and return at reduced rates, and the evidence shows that many persons, including plaintiff, her son and daughter, and the defendant Ware, took advantage of the low rates to visit the city of Pittsburgh. The defendant company's road ended at Brownsville, Pennsylvania, where it connected with the Pittsburgh and Lake Erie road, and where the crew of the defendant company delivered the train to the crew of the connecting carrier, and where on the return trip the train was redelivered to the defendant company and its trainmen, and the journey completed while it was under the control and management of the defendant and its agents. The accident in question occurred on the return trip, about twenty-five minutes after the train left Brownsville, and after the defendant by its trainmen had taken charge of the train to complete the journey.

The defendant railway company's plea was not guilty. The evidence shows that the alleged disorderly conduct began in the third or ladies' day coach, and between the passengers in the front end of the car, soon after the train left Pittsburgh, about 5:30 P. M., and continued intermittently all the way to Brownsville. The court, however, struck out all the evidence of such disorderly conduct occurring prior to the delivery of the train to the defendant at Brownsville, evidently on the ground that plaintiff sustained no injury therefrom and made no complaint thereof, and that defendant and its agents had no knowledge thereof, and were not charged with any responsibility therefor. The testimony shows that passengers in the front end of the car in which plaintiff was

riding were acquainted with one another and were enjoying a good time together, and were engaged in the amusement of throwing at one another paper wads, paper drinking cups, and banana and orange peelings, made up from their lunch baskets or boxes, and of which there does not seem to have been any complaint by any of the passengers. It does not appear, however, that plaintiff had participated in this amusement, but she admitted she made no complaint at any time to anyone, either trainman or passenger, and when after the accident, on learning that the defendant Ware had thrown the drinking cup that caused her injury, she requested that he be not arrested but permitted to go home, as the throwing of the cup was accidental on his part. The evidence also shows that the trainmen, after the accident, took charge of plaintiff and conducted her to the parlor car, where she was given the best of attention possible until the train reached Morgantown, where one of the defendant company's surgeons, summoned by the conductor, came aboard and dressed her wound, and took her on to Fairmont, where she was met also by another surgeon, and taken to a hospital, cared for and treated until returned to her home the next day by representatives of the railroad company; and no complaint seems to have been made against the defendant until just before the end of the year after the accident, when the present suit was brought with the purpose alleged.

The only notice imputed to the defendant company or any of its officers of the alleged misconduct which it is alleged resulted in plaintiff's injuries, so far as the evidence shows, is that the conductor of the train, after leaving Brownsville, on the return trip, and after reaching the car in which plaintiff was, observed some of the passengers. in the front end of the car engaged in passing paper wads at one another. It is conceded that he promptly ordered them to desist; and he says that they did so, so long at least as he was in the car; and the brakeman and flagman gave similar testimony. George Vickers, flagman and brakeman, says that on leaving Brownsville he and Kinsel, the front brakeman, walked through the car in which plaintiff was riding; that they found the passengers sitting there laughing and joking, but

that they did not at any time see anyone throwing paper wads through the car; that they went on through, and he called the next station, Maxwell, and on reaching there assisted the passengers in getting off at that point; that when he called the station none of the passengers said anything so far as he heard; that after leaving Maxwell he went back through the car and called the next station, East Millsboro, and observed nothing out of the ordinary going on; that the passengers were sitting there eating, and that there was some paper on the floor, which was usual on a through train; that on coming back to this car he did observe some throwing of paper wads in the front of the coach, and requested those engaged to "cut it out before somebody got into trouble," and that they did quit; that he then went into the next coach ahead, and on returning to the car in which plaintiff was riding, and when about half way through the car, some one came to him and said: "A lady was hit back there"; that he then went on back, and he and Kinsel assisted Mrs. Thompson to the chair car, where the trainmen, the porter and Kinsel rendered her all the aid they could. A number of passengers riding in the rear end of the same coach testified that they were not disturbed by what was going on in the front end of the coach; some did not even observe it, being engaged in conversation among themselves; and no one, not even the plaintiff, pretends that any complaint was made to any officer or employe of the railroad company, or to anyone engaged in the amusement. All who were examined say that everything was done good naturedly, and that those engaged seemed to be having a good time until the accident occurred. And it is conceded that Ware did not know that the drinking cup was concealed in the paper which he picked up from the floor and threw back in the direction from which it had come to him; and that the injury to plaintiff was wholly unintentional, and done only in the spirit of the occasion. The accident occurred between the first and second stops after leaving Brownsville; and the distance between Brownsville and Maxwell, the second stop, is only seven miles. The conductor and other trainmen were necessarily busy,

working the train as they were required to do. What they failed to do that reasonably could have been required of them under the circumstances, is not pointed out. These trainmen respectively warned the passengers so engaged to cease throwing paper wads; and they did cease. There is some evidence that paper wads were thrown at a brakeman, and that when he called the stations some of the passengers mocked him. But the brakeman on duty after the train left Brownsville denied this; and we think the practice, if indulged in, must have occurred with the crew in charge of the train between Pittsburgh and Brownsville. Besides, while the play may have been annoying to those not engaged in it, none complained, and nothing serious was threatened. Paper wads, banana and orange peelings, and paper drinking cups were not dangerous missiles. What could have been required of the trainmen that they did not do? Would they have been justified in dealing roughly with passengers thus good naturedly engaged in throwing paper wads?

A common carrier of passengers is not an insurer of its passengers' safety, and according to the authorities is not bound to the same extent to protect them against injuries by third persons as by its own servants. 10 C. J. 900. To render the carrier liable for injuries by fellow passengers, the carrier or its servants must be guilty of some negligence in respect to its duties as carrier. The bare fact of the injury is not enough to impute actionable negligence to the carrier.

The very high degree of care ordinarily required of a carrier to protect and carry passengers safely does not impose impossible or unreasonable protection, something against which no skill or foresight could reasonably provide. Wherefore, unless the agents or servants of a railroad company know or ought to know that injury is likely to be incurred by a passenger from the acts of fellow passengers, which by the use of proper care could be prevented, the carrier can not be rendered liable for injuries so incurred. And when a carrier, or its agents in charge of a train, have done all that could be required of it, and have no reason to apprehend danger to those in its charge while executing a contract of

carriage, the liability for such injury is that of the wrong-doer, and not of the carrier. 10 C. J. 902, and cases cited; *Louisville & N. R. R. Co.* v. *Brewer*, (Ky.), 143 S. W. 1014. Among the cases well illustrating the application of this rule are: *Snyder* v. *Colorado Springs etc. Ry. Co.*, 36 Colo. 288, 8 L. R. A. (N. S.) 781, 118 Am. St. Rep. 110; *Fritz* v. *Southern Ry. Co.*, 132 N. C. 829; *Widener* v. *Phila. Rapid Transit Co.*, 224 Pa. St. 171; *Barlick* v. *Balto. & Ohio R. R. Co.*, 41 Pa. Sup. Ct. 87. In the Colorado case cited, the conductor in forcing his way through a crowded car, pressed a passenger against a fellow passenger, who became angry and arose and surged against the plaintiff thereby throwing him from the car and injuring him. The railroad company was held not liable, the court holding that while it was possible, it was not in accordance with the usual course of events that a seated passenger would so lose control of himself as to inflict injury on a fellow passenger. Wherefore, the proximate cause of the injury was the action of the irritated passenger, and not any neglect of the railroad company. And in case of unanticipated assault committed by a fellow passenger, the carrier will not be held liable for an assault committed by a stranger which could not have been prevented or anticipated by the carrier. *Irwin* v. *Louisville & N. R. R. Co.*, 161 Ala. 489; *Woas* v. *St. Louis Transit Co.*, 198 Mo. 664, 7 L. R. A. (N. S.) 231; *Ormandroyd* v. *Fitchburg etc. R. Co.*, 193 Mass. 130, 118 Am. St. Rep. 457. The fact that the conductor may have observed passengers throwing paper wads and had warned them against it, was not notice to him that some of them might accidentally and unintentionally throw a tin cup and injure a fellow passenger. In *Simmons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.*, 97 Mass. 361, it was decided that while the evidence that passengers had been in the habit, before the accident, of sitting in a small boat installed on the deck over a place where passengers were accustomed to sit, was admissible, this fact did not show that the officers had any reason to suppose that such occupation would be dangerous. In the case of *Norris* v. *Southern Ry. Co.*, 84 S. C. 15, it was said:

"The rule that it is the duty of the carrier to use the highest degree of care to protect a passenger from a wrong or injury from a fellow-passenger, applies only where the carrier has knowledge of the existence of the danger or of facts and circumstances from which the danger may be reasonably anticipated." And in this case the court says: "It can not be laid down as a general proposition that the exercise of the highest degree of care for the protection of passengers from each other requires that the carrier should keep a watch over the passengers on its train, except over those from whom it has a reason to anticipate improper behavior." And it was held in *Hall* v. *Seaboard Air Line*, 84 Fla. 9, 93 So. 151: "The liability of the carrier in such case rests, not upon the tort of the passenger, but upon the negligent omission of the carrier through its servants to prevent the tort from being committed."

On the trial below, the facts upon which the right of the parties to the present writ of error are made to depend were not controverted. Wherefore, the trial court as requested, should have directed a verdict for the plaintiff in error. And as on another trial the facts are not likely to be different, it becomes unnecessary to respond to the other questions presented in argument. The defendant Ware has not complained of the judgment against him. So that part of the judgment will stand unaffected by the present decision.

Our conclusion is to reverse the judgment and set aside the verdict in so far as it relates to the defendant Monongahela Railway Company, and to remand the case to the circuit court for a new trial on the issue joined between it and the plaintiff.

*Judgment reversed; verdict set aside; new trial awarded.*