Helen H. **BULLOCK** and Grover C. Bullock, Plaintiffs,

v.

**TAMIAMI TRAIL TOURS**, Inc., Defendant.

No. 621.

United States District Court
N. D. Florida,
Tallahassee Division.

May 28, 1958.

---

1. Cf. Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640.

Victor M. Cawthon, Tallahassee, Fla., for plaintiffs.

Keen, O'Kelley & Spitz, Tallahassee, Fla., for defendant.

DE VANE, District Judge.

This is a suit brought by plaintiffs who were passengers on one of defendant's busses for damages sustained as the result of an assault upon them by another passenger riding on the same bus. Plaintiffs claim that the assault was inflicted upon them because of the position they occupied in the bus.

The evidence in the case in the main is not in dispute. The evidence shows that plaintiffs are British subjects, residing on the island of Jamaica where they were both born and reared. They are married to each other and are both musicians and teachers. The husband is also a minister of the Church of England. The husband is colored and the wife is white. They were on their first trip to the United States.

Reverend Bullock testified that he knew about segregation having been practiced in the Southern part of the United States, but that he had read in statements in a newspaper published in Kingston, Jamaica, that it had been abolished by a decision of the Supreme Court of the United States and by an order of the Interstate Commerce Commission, that he accepted these statements as true and relied upon them.

Reverend Bullock testified further that he made arrangements at Martin's Travel Agency in Kingston, Jamaica, for transportation for their visit to the United States. They were advised, so he testified, to travel by bus in order to see more of the country-side. Taking this advice, they purchased from the Agency airline tickets to Miami, Florida, and bus tickets from that point to New York by way of Kansas City, Missouri.

Upon boarding defendant's bus at Miami, the Bullocks seated themselves toward the front of the bus on the driver's side. When the bus reached its first stop at Coral Gables, about twenty miles outside of Miami, another passenger complained of the position Reverend Bullock occupied in the bus and the bus driver informed him of the complaint and asked him to move to the rear of the bus. This Reverend Bullock declined to do. Upon his declination the bus driver examined his tickets and announced to the passengers on the bus that he was unable to make Bullock move to the rear of the bus and they retained their seats until the incident that occurred at Perry, Florida, which resulted in this suit, took place.

The bus stopped at Pouncy's Restaurant, customarily used as a bus stop in that town after midnight. It was some time between two and three o'clock a. m. when the bus stopped at the restaurant. The bus driver, along with many of the passengers, went into the restaurant for a cup of coffee and while in there he told another bus driver or someone else of the presence in his bus of the Bullocks occupying seats well up in front of the bus and that they had declined to move to the rear of the bus.

Milton Poppell was in the restaurant at that time and overheard the conversation the bus driver had with the other person. There is some conflict in the evidence as to whether the bus driver was talking to another bus driver, to a policeman or to a third party, but the conflict is of no importance because the undisputed testimony shows that the bus driver had no conversation whatever with Poppell and did not even know him, or that he had overheard the bus driver's conversation with the third party.

While the bus was loading again Poppell purchased a ticket from the bus driver from Perry to Lamont, boarded the bus, demanded that the Bullocks move to the rear of the bus, and when they refused, assaulted Reverend Bullock, inflicting some damage to his face and body, and slapped Mrs. Bullock. The testimony is in dispute as to whether the bus driver was in the bus at the time of the assault. He says he was. Other testimony was to the contrary, but be that as it may, the bus driver called the police and the police arrested both Poppell and Reverend Bullock and demanded a $25 bond from each and directed the Bullocks to take a seat in the rear of the bus, which they did.

There is considerable testimony in the record as to the extent of the damage inflicted upon Bullock and as to the effect on Mrs. Bullock of the slap administered to her by Poppell, but due to the disposition this Court is required to make of this case under Florida law, it is not necessary to review this testimony.

The evidence in the case clearly discloses an unprovoked and illegal assault by Poppell upon the Bullocks. The question presented is whether the bus company is liable to the Bullocks for this illegal and unprovoked assault by another passenger. The law in many jurisdictions in this country is in conflict on this question. The Supreme Court of Florida in a very able opinion has settled the law in this state.

■■■ In Hall v. Seaboard Air Line Ry. Co., 84 Fla. 9, 93 So. 151, the Florida Supreme Court held that a carrier was not liable to a passenger for an unprovoked and illegal assault in cases such as this case. Without regard to the views of this Court as to what the law should be in such a case as this the decision of this Court is completely controlled by the decision of the Supreme Court of Florida in the case cited above.

Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Plaintiffs try to take this case out of the law established in the decision of the Supreme Court of Florida cited above by arguing that because of the attitude of the South towards integration carriers of passengers should anticipate assaults and adopt measures to protect passengers therefrom.

The evidence in the case completely refutes the contention of plaintiffs in this regard. Integration in transportation has now been in effect in Florida and elsewhere in the South for approximately four years and the undisputed evidence in this case is to the effect that insofar as the carriers, both railway and bus transportation, are concerned, this is the only case in which an unprovoked assault of this nature has occurred. In fact, the evidence in this case commends highly the attitude of the public, both colored and white, as to the matter of integration in transportation facilities. The colored people, by an overwhelming majority, prefer to be segregated and voluntarily segregate themselves on public transportation. The testimony is that it is a rare occasion when a colored person, riding on public transportation, insists upon the right to sit among white passengers, but where such right is asserted, no violence, except in this case, has ever occurred in this state or any of its adjoining states.

In conformity with the opinion of the Supreme Court of Florida cited above, this Court finds and holds that plaintiffs shall take nothing by this suit and that the defendant may go hence without day. An appropriate judgment in conformity with this Memorandum Decision will be entered herein.